**No. 58990.**—Crown Abrasive Co., Inc. *v.* United States, protest 213648–K (New York).

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Grinding Discs" and as "Cut-Off Wheels." It was assessed with duty at the rate of 25 cents per pound and 20 per centum ad valorem under the provision in paragraph 1539 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for—

Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539 (b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent, in rods, tubes, blocks, strips, blanks, or other forms.

The plaintiff claims that in their condition as imported the articles at bar are not laminated and, moreover, that synthetic resin is not the chief binding agent thereof. It contends that the merchandise is properly dutiable at the rate of 5 per centum ad valorem under the provision in paragraph 1514 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement, T. D. 52739, for—

All the following, if not containing over 0.1% of vanadium, or over 0.2% of tungsten, molybdenum, boron, tantalum, columbium or niobium, or uranium, or over 0.3% of chromium:

  *       *       *       *       *       *       *

    Manufactures of which corundum or artificial abrasive is the component material of chief value, not specially provided for (except wheels in chief value of corundum or silicon carbide).

Alternatively, claim is also made at the rate of 10 per centum ad valorem under the similar provision, as modified by the General Agreement on Tariffs and Trade, applicable to wheels in chief value of corundum or silicon carbide.

Articles representative of the merchandise at bar were received in evidence as plaintiff's exhibit 1–A and defendant's exhibit 1–B. They were shown to be used, according to thickness, either for grinding metals or for cut-off purposes in a manner similar to a circular saw. The inventor of the articles, represented by exhibits 1–A and 1–B, testified that they were made as follows: From 20 to 24 sheets of cellulose paper were first impregnated with synthetic phenolic resin, after which they were coated with an abrasive, either aluminum oxide, carborundum, or silicon carbide. The sheets were then cut into discs, placed together, and subjected to pressure of from 2,000 to 3,000 pounds per square inch and heat at 165 degrees Centigrade.

In the resultant product, represented by exhibits 1–A and 1–B, he said, the layers or sheets of paper as such disappeared, and the product became a uniform mass. He admitted that resin was the only binding agent in the product, but stated that it would be ineffective by itself and without the pressure and heat applied during the manufacture of the product.

Chester W. Bryan, a mechanical engineer with considerable background and experience in the abrasive field, gave testimony as to analysis made under his direction and in his presence by a commercial testing laboratory. In such analysis, he said, a disc was smashed up with a hammer and a portion of 30 grams of the material so obtained was examined under a powerful microscope. The witness stated that in such examination he could find no evidence of lamination in the finished product.

Nothing was offered to show whether such a test would disclose laminations if they had been present. It would appear to a nontechnical person from a visual examination of the 30-gram sample, which was offered and received in evidence as plaintiff's exhibit 3, that the completeness with which the article was smashed might destroy any evidence of lamination that might exist.

The witness identified a piece of laminated phenolic material, made of layers of cloth and phenolic resin bound together by pressure and heat into a sheet. As to this material, which was received in evidence as plaintiff's exhibit 6, the witness stated that he had examined it microscopically and that the layers are visible. Presumably, it was intended to show by this exhibit and this testimony the type of laminated product intended to be covered by paragraph 1539 (b), *supra.* There is, however, nothing to show that material such as plaintiff's exhibit 6 is the only material responding to the term "Laminated products * * * of which any synthetic resin or resin-like substance is the chief binding agent."

For the defendant, Herbert W. Eckweiler, assistant chief chemist of the U. S. Customs Laboratory, testified that an analysis of part of defendant's exhibit 1–B was made under his supervision. In the analysis, a piece of the exhibit was treated with sodium hydroxide, which acted upon some of the ingredients in such fashion that two thin pieces of material were separated from the original piece of defendant's exhibit 1–B. These the witness identified as layers peeled off each of the outer sides of the piece, and, according to the witness, show that the material itself consists of layers. The two thin pieces, as well as the remainder of

the piece tested, were received in evidence and marked defendant's collective exhibit D-1 and defendant's exhibit D-2, respectively. The latter exhibit shows a layer structure.

On cross-examination, the witness admitted that a mere visual examination would not disclose laminations in the material imported, but he denied that the effect of heat and pressure in the manner stated by the inventor in his earlier testimony would be to disintegrate the paper.

It seems clear from the record that the heat and pressure to which the original materials are subjected cause the resin to flow and bind the materials together. The resin is, therefore, the binding agent. We are satisfied from the record that the plaintiff has failed to establish by a preponderance in weight of the evidence that in its imported condition the article is not laminated. It is, therefore, in our opinion, a laminated product of which synthetic phenolic resin is the chief binding agent and is within the language of the provision under which it was classified.

Inasmuch as that provision, by its own terms, takes precedence over any other tariff provision which may embrace the article, it is unnecessary to determine whether the merchandise is covered by paragraph 1514, under which plaintiff claims. We observe, however, that plaintiff failed to establish that the articles involved do not contain any of the elements named in the provision, such as vanadium, tungsten, molybdenum, etc., in excess of the percentages set forth in the provision.

For the reasons hereinbefore stated, the protest claims are overruled, and judgment will issue accordingly.