(C. D. 1783)

Lyons Transport *v.* United States

United States Customs Court, Second Division

(Decided May 17, 1956)

*Wallace & Schwartz* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard M. Kozinn* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: Plaintiff imported from Canada merchandise described as "hard copper square sheared" on the several invoices to which this proceeding relates. The collector of customs classified the merchandise as articles or wares, wholly or in chief value of metal, not specially provided for, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and imposed duty thereon at the rate of 22½ per centum ad valorem.

By its protest, plaintiff claims that said merchandise is more specifically provided for in paragraph 381 of said act (19 U. S. C. § 1001, par. 381), as modified by said general agreement, as copper in sheets and, accordingly, dutiable at 1¼ cents per pound.

The text of the competing statutory provisions is here set forth:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 381 | Copper in rolls, rods, or sheets_____ | 1¼¢ per lb. |
| * | *      *      *      * | *    * |
| 397 | Articles or wares not specially provided for, whether partly or wholly manufactured: | |
| * | *      *      *      * <br> Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer: | *    * |
| * | *      *      *      * <br> Other (except slide fasteners and parts thereof)_____ | *    * <br> 22½% ad val. |

For convenient reference, paragraph 381, as it appears in the basic act of 1930, is quoted in full:

Copper in rolls, rods, or sheets, 2½ cents per pound; copper engravers' plates, not ground, and seamless copper tubes and tubing, 7 cents per pound; copper engravers' plates, ground, and brazed copper tubes, 11 cents per pound; brass rods, sheet brass, brass plates, bars, and strips, Muntz or yellow metal sheets, sheathing, bolts, piston rods, and shafting, 4 cents per pound; seamless brass tubes and tubing, 8 cents per pound; brazed brass tubes, brass angles and channels, 12 cents per pound; bronze rods and sheets, 4 cents per pound; bronze tubes, 8 cents per pound.

At the trial, two witnesses were called, one for the plaintiff, the other for defendant.

Plaintiff's witness, August Frymark, testified that he was vice president in charge of purchasing for the Victor Mfg. & Gasket Co. of Chicago, the actual importer of the subject merchandise; that his company, with which he had been associated for 36 years, was engaged in the manufacture of automobile gaskets, stampings, and oil seals for automotive power engines.

He described the imported merchandise as 6-pound tempered copper in sheets, anywhere from 8¾₆ to 11¹⁵⁄₁₆ inches wide, in lengths from approximately 30 to 96 inches, and one-sixteenth of 1 inch in thickness, with slight variations up or down.

Frymark testified to the use of the imported product as follows:

Well, we take these sheets and slit them into the size of the gasket that is to be manufactured from the piece of copper that is slit.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. You don't reduce the thickness?—A. No, we don't, we only reduce the length of the sheet to the gasket size and put that into a punch press or stamping press and stamp out what we call a gasket.

The witness produced a sample of one of the gaskets manufactured by his company from merchandise like the importation, having approximately the following dimensions: 8½ inches wide, 21 inches long, and one-sixteenth of 1 inch in thickness. The sample was received in evidence as exhibit 1.

On cross-examination, Frymark was interrogated with respect to "an order for 8¼″," and was asked if that was sold to his company as "an 8¼″ strip," to which he replied, "8¼″ by various lengths."

X Q. Was it 8¼″ strip?—A. You can call it a strip or sheet, it is the same thing in our business.

Defendant's witness, Allan R. Armstrong, had been a salesman for the Chase Brass & Copper Corp. for 10 years and in the employ of that corporation for 15 years.

He testified that the Chase Brass & Copper Corp. was engaged in the manufacture of various copper and brass alloys in the form of sheet, rod, tubing, and wire, and that he was familiar with the manufacture and sales of the products of his company; that copper articles, in sizes ranging from 8⅜ inches wide by 0.0515 gauge to 0.0685 gauge by approximately 8 feet long, were sold as copper strip. He described briefly the difference between a copper strip and sheet as follows:

In our industry anything twenty inches or under is strip; anything over twenty inches is a sheet.

Armstrong stated that the Chase Brass & Copper Corp. was a member of the Copper & Brass Research Association, and he was shown a page taken from defendant's exhibit A, purporting to show the terminology used in the industry with respect to strips and sheets, which publication, he testified, would be considered authoritative in the industry.

On cross-examination, Armstrong stated that his company was engaged in the manufacture of sheets, rods, tubing, wire, and so forth, and gave the following testimony:

X Q. And strip is one of the subdivisions of sheet is that correct?—A. Yes, that is correct.

The principle of commercial designation is not presented in this case. The only issue before us is whether or not the subject merchandise comes within the common meaning of the term "Copper \* \* \* in sheets," as used in said paragraph 381.

In its brief, defendant invites attention to our decision in *Burgess Battery Co.* v. *United States*, 19 Cust. Ct. 28, C. D. 1063. The question before the court in that case was whether an importation, described as coiled zinc, measuring 7⅝ inches wide, 0.070 of 1 inch thick, and approximately 40 feet long, should be classified in paragraph 394 of the Tariff Act of 1930 as "Zinc * * * in sheets." In the course of our opinion, we quoted the following dictionary definitions of the terms "sheet" and "strip":

Webster's New International Dictionary, Second Edition (1943):

*sheet*:

   10. A broad, thinly expanded portion of metal or other substance; * * *

*strip*:

   1. A narrow or relatively long piece; * * *
   *       *       *       *       *       *       *
   10. A rolled piece of metal, esp. iron or steel, of the thickness of sheet metal but relatively long and narrow.

Funk & Wagnalls New Standard Dictionary of the English Language (1942 Ed.):

*sheet*:

   1. A very thin and broad piece of any substance; * * *
   2. A broad, flat surface; * * *

*strip*:

   1. A narrow piece comparatively long; * * *

The Century Dictionary (1891 Ed.):

*sheet*:

   2. In general, a broad, usually flat, and relatively thin piece of anything, either very flexible, as linen, paper, etc., or less flexible, or rigid, as lead, tin. iron, glass, etc. * * *

*strip*:

   1. A narrow piece, comparatively long * * *.

The Oxford Dictionary (1914 Ed.):

*sheet*:

   9. A relatively thin piece of considerable breadth of a malleable, ductile, or pliable substance. * * *

*strip*:

   1. *       *       *       *       *       *       *
   d. A narrow piece of board, metal plate, etc. * * *

We then stated:

From the foregoing definitions, it is at once apparent that zinc of the kind and form involved herein, 7⅝ inches wide, 70/1000 of 1 inch thick, and approximately 40 feet long, would be included within the meaning of the word "strip," and for the same reason excluded from the term "sheet."

We also pointed out in the *Burgess* case, *supra*, that "what constitutes a strip as distinguished from a sheet has been the subject of considerable litigation in this and our appellate court," and cited the following decisions of our appellate court and of this court: *Universal Shipping Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 245, T. D. 33479; *Lunham & Reeve, Inc.* v. *United States*, 3 Cust. Ct. 293, C. D. 258,

affirmed in *Lunham & Reeve, Inc.* v. *United States*, 28 C. C. P. A. (Customs) 268, C. A. D. 153; *Seligmann et al.* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336; *Strouse, Adler & Co.* v. *United States*, 3 Ct. Cust. Appls. 184, T. D. 32466; and *Joshua Oldham & Son et al.* v. *United States*, 19 Treas. Dec. 1024, T. D. 30989.

After reviewing the cases just above cited, we stated in the *Burgess* case, *supra*:

From a cursory examination of the Metal Schedule of the Tariff Act of 1930 it becomes at once significant that Congress was very particular in describing certain forms of steel, aluminum, zinc, and similar base metals. For example, paragraph 309 provides for steel sheets, plates, bars, and rods, but makes no specific provision for strips. The same is true of paragraph 310 which covers sheets or plates of iron or steel, coated with tin or lead. However, in the statutory provisions set forth below we have emphasized the word "strip" wherever Congress saw fit to enumerate that item. For instance, in the proviso to paragraph 313, there is a specific provision for—

* * * bands and *strips* of iron or steel, whether in long or short lengths, not specially provided for, * * *.

and in paragraph 315, we find a provision reading—

* * * and on all *strips*, plates, or sheets of iron or steel of whatever shape, other than polished, planished, or glanced sheet iron or sheet steel, * * * there shall be paid two-tenths of 1 cent per pound in addition to the rates provided on plates, *strips*, or sheets of iron or steel of common or black finish of corresponding thickness or value.

Following the foregoing references to statutory provisions containing the words "strips" or "sheets" of various metals, we concluded, as we do in the case before us, that—

From the above, it will be noted that in the preparation of the Metal Schedule, Congress was definite and certain in the use of words. Where it was intended that strips of the named metals were to be included within the purview of a particular paragraph, *eo nomine* provision was made therefor. * * *

With further reference to paragraph 381, *supra*, it will be observed that while the provision invoked by plaintiff reads "Copper in rolls, rods, or sheets," the same paragraph enumerates brass rods, *sheet* brass, brass plates, bars, and *strips*, which gives further indication of the care with which Congress made use of the terms "sheets" and "strips" in the metal schedule; and it is significant to note also that, in paragraph 316, Congress was careful to limit the steel in strips to those "not exceeding sixteen inches in width." In the case at bar, the so-called copper squares are from $8\frac{1}{16}$ inches to $11\frac{15}{16}$ inches wide.

Applying the reasoning of the *Burgess* case, *supra*, to the facts presented here, we find and hold that inasmuch as the subject merchandise consists of copper in strips it is not within the provision for copper in sheets, as claimed by plaintiff.

Therefore, the protest is overruled and judgment will issue accordingly.