(C.D. 2835)

Rune Nicklasson, Inc., dba Slima Abrasive Co. et al.

*v.*

United States

United States Customs Court, First Division

(Decided November 30, 1966)

*Glad & Tuttle* and *Lawrence & Tuttle* (*Edward N. Glad* and *Earl R. Lidstrom* of counsel) for the plaintiffs.

*Barefoot Sanders*, Assistant Attorney General (*James F. O'Hara, Charles P. Deem, Mollie Strum, Sheila N. Ziff*, and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

NICHOLS, Judge: Two entries are involved in these cases which were consolidated at the trial. The special customs invoice accompanying entry No. 10216 describes the merchandise as hub discs and cut-off wheels of varying sizes and with varying numbers. This shipment was exported from Sweden on or about July 14, 1961. The special customs invoice accompanying entry No. 15235 describes the merchandise as grinding wheels of varying sizes with the number 210, which, according to the packing list, means quality. The shipment was exported from Sweden on or about August 19, 1960.

Both shipments were assessed with duty at 17 per centum ad valorem and 21 cents per pound under paragraph 1539(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108. The collector's report covering entry No. 10216 states that the merchandise was classified under that paragraph as "Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent." The report covering entry No. 15235 states that the merchandise was assessed under that paragraph as "Laminated products of which any synthetic resin or resin-like substance is chief binding agent, blanks, blocks, rods, strips, tubes, or other forms."

The claim now relied on by plaintiff is that the merchandise is properly dutiable at 21 per centum ad valorem under paragraph 230(d), as modified, as manufactures of which glass is the component of chief value, not specially provided for.

The pertinent provisions of the Tariff Act of 1930, as modified by T.D. 54108, are as follows:

Paragraph 1539(b):

Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:

    \*       \*       \*       \*       \*       \*       \*

In rods, tubes, blocks, strips, blanks, or other forms _____ * * *   21¢ per lb. and 17% ad val.

Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent__ * * *   21¢ per lb. and 17% ad val.

Paragraph 230(d):

All glass, and manufactures of glass, or of which glass is the component of chief value, not specially provided for (except broken glass or glass waste fit only for remanufacture and pressed wares) _ * * *   21% ad val.

Rune Nicklasson, owner of Slima Abrasive Co., testified that his firm imports and sells grinding wheels and cut-off wheels and that he was familiar with the merchandise covered by the invoices herein. Two samples representative of the composition and make-up were received in evidence as exhibits 1 and 2. Exhibit 1 is a black wheel about 9 inches in diameter and less than a quarter inch thick, having a hole in the center, and having printed thereon, among other things: "Finoplast A24PG." Exhibit 2 is a heavier wheel about 7 inches in diameter and over one quarter inch thick, having a raised portion and a hole in the center. A label is affixed containing the words, among others: "Reinforced. Resin bonded. Type 210. Size 7"." A portion of each wheel has been cut away and certain fibers stick out. The witness testified that these fibers are a mesh reinforcing. It was stipulated that there was a single mesh in exhibit 1 and five meshes in exhibit 2 and that the meshes were a weaving of glass fibers. Exhibit 1 was called a cut-off wheel and was representative of some of the numbers on the invoice covered by entry No. 10216. No cut-off wheels are covered by entry No. 15235. It was not made clear what exhibit 2 was representative of.

At a subsequent hearing, there were read into evidence the interrogatories propounded to Swen Wallin of Sweden pursuant to a commission and his answers thereto. He testified that he was a part owner of Slimaverken and that he was generally familiar with the production method and the costs of the merchandise which his firm sells to the plaintiff. He explained:

* * * During the war my family owned a stone-industry, but we were unable to procure grinding wheels for our own industry due to sales ban. Then we were compelled to manufacture them ourselves. I was invited to the United States by Gerald Klysken and there I was able to visit several big firms and study the method of production. I have also been in Germany and Switzerland.

He described the method of manufacture of hub discs and cut-off wheels as follows:

The hub discs and cut-off-wheels Nicklasson received are hot pressed.

(a) The mixture is made as follows: Aluminumoxide is mixed with cryolite and $Fe_2S_3$.

(b) Furfurol and liquid resin is mixed with (a).

(c) Powder resin and lime is thereafter added to mixture (a) and (b) and is well blended, whereafter bardol is added.

(d) The ready mass is weighed up in sufficient volume and is distributed in a rotating form, whereafter it is covered by glass-fiber; a new volume of mass, etc., until the wheel contains sufficient volume. Thereafter the lid is put on and the form with its contents is placed in a hydraulic press with steamheated plates. After a certain period of time, the form is taken out, is cooled and the wheel is pushed out. Thereafter it is put into an oven for additional hardening and is weighed for control. * * *

He gave no description for grinding wheels.

The witness was asked to give the costs of the various components during the period August 1960 through August 1961. He replied that there are not two wheels of different quality which have the same components, since the components vary somewhat. He said his firm had prepared a list of the costs for the cut-off wheel and the hub disc which was submitted as Annex 1. He submitted no figures for the grinding wheel. He said he did not understand the question as to cost figures during the period August 1960 through August 1961.

Annex 1 is in the Swedish language, except for the figures, and no translation has been appended.

Defendant offered in evidence a report of the U.S. Customs Laboratory, dated February 13, 1963, giving the results of analysis of the two samples, as follows:

Lab. No. 565:

The sample marked Size 7 Type 210 is a laminate composed of alternative layers of fiberglass fabric (5) and abrasive grains (6), and contains a synthetic phenolic resin. The resin impregnates the fiberglass layers and in our opinion serves as the chief binding agent.

*　　*　　*　　*　　*　　*　　*

Lab. No. 566:

The sample marked Finoplast A 24 PG is composed of a layer of fiberglass fabric coated on both sides with abrasive grains which are bound to the fiberglass fabric by means of a synthetic phenolic resin. In our opinion the synthetic resin is acting as the chief binding agent.

Plaintiff claims that the record shows that neither the hub discs nor the cut-off wheels are in chief value of any product, laminated or otherwise, of which any synthetic resin or resin-like substance is the chief binding agent; that the component material of chief value is fiberglass; and that the fact that synthetic resin may constitute the chief binding agent of the finished products does not bring them within the purview of paragraph 1539(b) because of the preexisting material doctrine, and that at the time the various components were joined to make the wheels, the only material which contained resin was the bakelite material, which was only the third most valuable component or preexisting product.

The evidence, however, does not support these claims. Mr. Wallin, who said he was a part owner of the Swedish seller, did not state what his duties were; he did not state he was a chemist, and did not show he had substantial knowledge of the method of production of the merchandise, mentioning only that he had visited some unidentified firms in the United States and studied the method of production. He said he was "generally" familiar with the method of production of this merchandise. Normally the testimony of a person not a chemist on the chemical composition of a product is inadmissible. *United States* v. *C. J. Tower & Sons*, 38 CCPA 131, C.A.D. 450. While a responsible executive may testify concerning the operations of his company, it must be shown by evidence that he has acquired the information in the regular course of duty and that there is reason to believe he was in a position to have acquired knowledge of what he testified to. *Wm. A. Hausman Co., Inc.* v. *United States*, 57 Cust. Ct. —, C.D. 2828, and cases cited. In the instant case, Mr. Wallin's testimony as to the method of production of the hub discs and cut-off wheels is of little probative value, since it has not been shown that he was in charge of production or had any technical knowledge of the chemical or manufacturing process.

Plaintiff's claim is based on the theory that the imported merchandise is outside the scope of paragraph 1539(b) of the Tariff Act of 1930 and said paragraph, as modified. In *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, 5, C.A.D. 809, the court divided paragraph 1539(b) into three groups of merchandise:

(1) Laminated products of which any synthetic resin or resin-like substance is the chief binding agent.

(2) Manufactures wholly or in chief value of any of the foregoing laminated products.

(3) Manufactures wholly or in chief value of any other product of which any synthetic resin or resin-like substance is the chief binding agent.

Commenting on group (1) products in *Imperial International Corp.* v. *United States*, 39 Cust. Ct. 240, 243–244, C.D. 1934, the court said:

\* \* \* In providing for laminated products as a material Congress used the expression "(whether or not provided for elsewhere in this Act)." Such an expression constitutes language of an "invading" character, and "Every paragraph [of the tariff act] \* \* \* must yield to that language. (*Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367).

Consequently, if the imported merchandise is, in fact, a laminated product material, even if it were composed in chief value of wood, it would nevertheless, take classification under paragraph 1539(b), *supra*, as claimed by the defendant, rather than under paragraph 412, as claimed by the plaintiff.

Entry No. 15235 may be disposed of with the statement that there is no cost breakdown undertaking to prove the entered grinding wheel is of chief value of glass and no evidence to show the method of its manufacture, Mr. Wallin having excluded the grinding wheel from his description. We have no sample. While plaintiff wants us to suppose the grinding wheels are much like the other involved merchandise, evidently the collector saw them as very different, having classed the grinding wheels in group 1 and the others in group 3. We would blunder badly, therefore, if we treated any of the evidence applicable to the other merchandise as applying to the grinding wheels. We consider them no further.

The hub discs and cut-off wheels covered by entry No. 10216 were assessed as "Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent." The Laboratory Report does not call the sample, exhibit 1, a "laminate," but says it is composed of a layer of fiberglass fabric coated on both sides with abrasive grains bound to the fabric by synthetic phenolic resin which acts as the chief binding agent. To the layman, the sample appears to be laminated.

Plantiff seeks to take this merchandise out of paragraph 1539(b) on the ground that, in order for the provisions covering group (3) merchandise to apply, a material of which a synthetic resin is the chief binding agent must exist before the imported article comes into existence, citing *United States* v. *J. E. Bernard & Co., Inc.*, 42 CCPA 69, C.A.D. 573, and *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc., supra.* Defendant does not dispute the applicability of the preexisting material doctrine but claims that the evidence is not sufficient to overcome the presumption that the collector found that a product having synthetic resin as the chief binding agent did preexist.

Such facts as have been presented here are analogous to those in *Burgess Battery Co.* v. *United States*, 43 Cust. Ct. 189, C.D. 2125. The

merchandise there was "carbon cloth" manufactured with the use of carbon black, graphite, and a synthetic resin. The three materials were mixed together and, during the mixing, the resin became a kind of liquid. The mixture was then made into a film or cloth on a calender resulting in a strip of film in which the carbon and graphite were evenly dispersed. The court found that there were two separate and well-defined stages in the manufacturing process, stating (p. 192) :

* * * The first stage was to make the mixture of the materials involved, and the second stage was to calender the mixture. When the materials were mixed together, the result was a liquid or semiliquid, consisting of the resin with carbon black and graphite dispersed in it. The purpose of the resin in the mixture was to bind the other ingredients and itself into a homogeneous mass, and we are of the opinion that this mixture was a product of which a synthetic resin was the chief binding agent.

It added (p. 194) :

* * * The principle of the *Bernard* case would seem to be that if the material, or product, specified in paragraph 1539 (b), of which synthetic resin is the chief binding agent, actually does exist as *such material or product*, whether in activated or unactivated form, prior to the manufacturing operation by which the ultimate article is made, the requirements of the preexistence rule or doctrine are satisfied and the merchandise is classifiable under paragraph 1539 (b). [Italics quoted.]

It held that in the case before it there was a point of time at which the material existed as a mixture before the film or cloth was made with the use of the mixture and that, therefore, the merchandise was covered by paragraph 1539 (b).

Even if Mr. Wallin's description of the method of manufacture in the instant case is accepted, it would appear that there were or may have been stages of manufacture, in the first three of which various ingredients, including resin, were mixed to form a mass, and in the fourth of which the glass fiber was added to the mass, and this possibility being open, the collector's classification is not refuted.

Thus, the merchandise can be removed from paragraph 1539 (b) only if it is established affirmatively that it is in chief value of glass. The only evidence on this point is Annex 1, which Mr. Wallin said was prepared by his firm and is in the Swedish language. This court has no judicial knowledge of Swedish and cannot with confidence interpret a document in that language. It was, however, admitted without objection, and the record includes a partial translation by plaintiff's learned counsel. Cf. *United States* v. *Wheeler, Elder & Elder et al.*, 17 CCPA 279, 281, T.D. 43691; *Jose A. Montemayor e Hijos et al.* v. *United States*, 24 CCPA, 7, 15, T.D. 48288. The deposition reflects that steps (a), (b) and (c) were performed on the other ingredients before they were added to the fiberglass in step (d). Therefore, in proving com-

ponent material of chief value it would be necessary to show the value added to the other materials by these prior steps. *Wheeler & Miller et al.* v. *United States*, 54 Cust. Ct. 137, 139, C.D. 2521, and cases cited. The annex, if we puzzle it out correctly, fails to do this. Other objections to the document are that we do not know who prepared it or from what records of the company; it does not purport to give costs for the period of importation involved here; it gives component materials and costs for two items of merchandise, but Mr. Wallin said the components of wheels of different quality vary somewhat. For these reasons, the evidence presented by plantiff is insufficient to establish that the merchandise covered by entry No. 10216 is in chief value of glass.

The protests are overruled and judgment will be rendered for the defendant.