**SOMMERS PLASTIC PRODUCTS CO.,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**
**C.D. 3002; Protest 63/5144–12763–61.**

United States Customs Court,
First Division.

May 11, 1967.

Barnes, Richardson & Colburn, New York City (Earl R. Lidstrom and Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Barefoot Sanders, Asst. Atty. Gen. (Bernard J. Babb and Steven R. Sosnov, New York City, trial attys.), for defendant.

Before OLIVER, WATSON, and RAO, Judges.

RAO, Chief Judge.

The merchandise involved in this case is described on the invoice as "Polyvinyl chloride mats sheeting * * * 36″ in width, about 30 yards per roll" and "45″ in width, about 20 yards per roll." It was imported from Japan and entered

at the port of New York on January 14, 1960, and was assessed with duty at 21 cents per pound and 17 per centum ad valorem under paragraph 1539(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, as manufactures of a product of which synthetic resin is the chief binding agent. The claim pressed by the plaintiff is that it is properly dutiable at 6¼ cents per pound and 10½ per centum ad valorem under said paragraph, as modified, as laminated products of which any synthetic resin is the chief binding agent, in sheets.

The pertinent provisions of said paragraph of the tariff act, as modified, are as follows:

1539(b)  Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:
In sheets or plates .............*** 6.25¢ per lb. and 10½% ad val.

In rods, tubes, blocks, strips, blanks or other forms ...............*** 21¢ per lb. and 17% ad val.

1539(b)  Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent .*** 21¢ per lb. and 17% ad val.

———◆———

At the opening of the trial, it was stipulated that the merchandise as imported was in the form of sheets. The Government now takes the position that the merchandise was not in the form of sheets and that the stipulation is not binding. This point will be discussed infra.

At the trial, Isadore Schnopper, assistant chief chemist in the customs laboratory in New York, testified that Customs Laboratory Report No. E 1852 was prepared under his supervision, and that a report on a 5 by 8 card, customs Form No. 6485, contained a record of the chemist who performed the actual work of analysis, Mr. Graves. The sample attached to the laboratory report, the laboratory report, and the card were received in evidence as plaintiff's exhibits 1, 2, and 3, respectively.

The laboratory report, which covers an analysis of a sample of the merchandise involved herein, states:

The sample, a section of fabric-backed plastic sheeting, consists of a tan top layer of polyvinyl chloride type synthetic resin (33%), and a middle layer of foamed polyvinyl chloride type synthetic resin (57%) backed with a rayon fabric (10%).

The synthetic resin in the top layer contains 5.4% ash and no organic filler.

The synthetic resin in the middle foamed layer contains 5.6% ash (chiefly calcium carbonate), and no organic filler.

In our opinion the synthetic resin in the middle foamed layer only serves as chief binding agent.

Mr. Schnopper testified that the report means that the sample was a three-layered sheet and the percentages referred to a proportionate part of the weight of the entire sheet.

Donald Graves, the chemist who analyzed the sample and prepared the laboratory report and the analysis card, testified that the initial procedure is to separate the layers, which is done physically with a small spatula or fingernails, or in some cases with a few drops of solvent. After the separation in this case, there were three distinct layers consisting of the materials mentioned in the laboratory report. No analysis was made for the constituent which bound the three layers together. In addition to the polyvinyl chloride (a synthetic resin) in the surface layer, he found an inorganic material consisting essentially of a pigment, which constituted 5.4 percent ash. In the middle foamed layer, an ash content of 5.6 percent, substantially calcium carbonate, was found. He did not look for or find any other materials. No materials other than synthetic resin or rayon which could act as a binding agent were found, and the witness did not consider that the rayon acted as a binding agent. In his opinion, synthetic resin acted as the chief binding agent in the middle layer but not in the upper layer nor in the fabric. He could not say whether synthetic resin acted as the chief binding agent of the entire product because he did not analyze with that point in view. He could not determine, from an examination of the sample, whether the middle layer held together the bottom layer and the top layer, but he did observe that prior to separation the three layers adhered together.

Herman Schecter, president of the plaintiff company, testified that his duties included the buying and selling of the firm's products and that he was familiar with the products which his company dealt in in January 1960. He identified the sample, plaintiff's exhibit 1, as material which his firm imported from Japan called "Casu-foam." He arranged for its purchase when he was in Japan and placed orders for different colors. Samples were received in evidence as plaintiff's exhibit 4. These samples were prepared to represent larger sheets of the material and were taken from rolls of the imported merchandise. The samples appear to be in three layers firmly adhering to one another. The top layers are in different colors and resemble leather in appearance.

Mr. Schecter testified that he had visited the manufacturer, Kyokuto Chemical, in Japan in 1960 and had observed Casu-foam being manufactured. He had also seen similar products made innumerable times. He indicated that there was more than one method of manufacture but that the general process was the same. A schematic drawing, illustrating a part of a typical method for laminating expanded vinyl, prepared by a chemist who was familiar with the initial patents and production of this material, was received in evidence as plaintiff's illustrative exhibit 5. With the aid of this drawing, Mr. Schecter, although not a chemist or technical expert, described the manufacturing operations he had observed.

The witness said there are three separate components in the merchandise. The top layer is a previously calendered polyvinyl chloride sheeting; the middle layer is composed of polyvinyl chloride or synthetic resin with a foaming agent, and the bottom layer is rayon material. The middle layer goes through an oven and comes out in a jellified, or sticky, gummy state. It is fed through rollers and squeezed onto heated rayon fabric which is suspended on a bar and comes down from the top through other rollers. Heat and pressure are applied as the components go through nip rolls which result in those components being joined together. The heat activates the foaming agent in the middle layer and causes it to expand. Following this, the top layer of polyvinyl chloride, which has been heated, is applied to the top of the middle foam layer. The material then goes through two rolls, a hard rubber roll and a steel engraved roll which has

the engraving or character of the leather grain. Heat and pressure impart the grain of the steel roll onto the surface of the top layer and also bond it to the top surface of the middle layer. Thereafter, the material goes over cooling drums to set it.

The witness stated that the synthetic resin in the middle layer acted as a bond between the top layer and the bottom layer because it was in a soft, semiliquid, jellified state. In his opinion, the rayon fabric and the polyvinyl layer were bonded to the middle foam layer as the result of the heat and pressure applied and the jellified state of the middle layer. He explained that the synthetic resin was a gummy sort of substance that adhered to the fabric.

Mr. Schecter testified that material can be embossed after the three layers are joined but Casu-foam was not produced that way. The layers can be joined without embossing so long as pressure and heat are applied. The merchandise here is produced by continuous processes, one following the other.

■ Since the collector classified the merchandise as manufactures wholly or in chief value of a product of which synthetic resin is the chief binding agent, it is presumed that he found that there was a preexisting product having synthetic resin as the chief binding agent and that the imported merchandise was in chief value of that product. The record establishes that the three layers existed as separate components before being joined together and that synthetic resin was the chief binding agent of the middle layer. No evidence has been presented as to the value of the components. Therefore, the collector's presumed finding that the middle layer was the component in chief value stands. Thus, it is evident that the merchandise is a manufacture in chief value of a product of which synthetic resin is the chief binding agent.

■ The merchandise is also a laminated product, since the record and the exhibits clearly establish that it was constructed with layers. Richard Crittall Radiant Heating Corp. v. United States, 27 Cust.Ct. 193, C.D. 1369.

■ Paragraph 1539(b) of the Tariff Act of 1930, as originally enacted, provided for "Laminated products (whether or not provided for elsewhere in this Act) * * *." This provision has been held to be invasive in character so that every other provision of the tariff act must yield to it. Imperial International Corp. v. United States, 39 Cust.Ct. 240, C.D. 1934; Standard Trading Co. et al. v. United States, 55 Cust.Ct. 295, C.D. 2593; Rune Nicklasson, Inc., dba Slima Abrasive Co. et al. v. United States, 57 Cust.Ct. 456, C.D. 2835. Therefore, if the imported merchandise is a laminated product of which any synthetic resin is the chief binding agent, it must be classified under one of the provisions for such products in paragraph 1539(b) rather than under the provision for manufactures wholly or in chief value of a product of which a synthetic resin is the chief binding agent. Richard Crittall Radiant Heating Corp. v. United States, supra; Crown Abrasive Co., Inc. v. United States, 34 Cust.Ct. 347, Abstract 58990. The same result would be reached under the ordinary principles of relative specificity since the provision for laminated products of which any synthetic resin is the chief binding agent is more difficult to satisfy than that for manufactures wholly or in chief value of a product of which any synthetic resin is the chief binding agent. John J. Coates Co. et al. v. United States, 44 CCPA 97, C.A.D. 643; United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party in Interest) v. Simon Saw & Steel Company, 51 CCPA 33, C.A.D. 834; United States v. Mannesmann-Meer, Inc., 54 CCPA ——, C.A.D. 897.

The next question is whether or not synthetic resin is the chief binding agent of the entire product. While there is no technical or chemical evidence on this point, Mr. Schecter, who was familiar with the merchandise and had seen it and similar products manufactured, described the process on the basis of his

personal observations. Testimony of this type has been accepted by courts, where it is uncontradicted and nothing else has been offered. Mutual Trading Company, Inc. v. United States, 57 Cust. Ct. 318, C.D. 2802, and cases cited. On the basis of his observations, Mr. Schecter stated that, in his opinion, the three layers were bounded by the synthetic resin of the middle foamed layer which was in a jellified state and the heat and pressure applied. His testimony is uncontradicted, since the chemist made no examination for and did not testify to the binding agent of the entire product.

In Crown Abrasive Co., Inc. v. United States, supra, sheets of cellulose paper were impregnated with synthetic phenolic resin, coated with an abrasive, and subjected to heat and pressure. A witness testified that resin was the binding agent, but that it would be ineffective by itself, without the heat and pressure applied during manufacture. The court said:

> It seems clear from the record that the heat and pressure to which the original materials are subjected cause the resin to flow and bind the materials together. The resin is, therefore, the binding agent. * * *

In Imperial International Corp. v. United States, supra, the merchandise was made of veneers of wood and synthetic resin and was subjected to heat and pressure. "The press apparently contained dies or molds in the shape of knife handles, and, as a result of the application of heat and pressure, the resin was released and activated, and the layers of veneer were bound together and shaped into the form of knife handles." The court held that the articles were made by a process of lamination and that the synthetic resin bound the layers together.

■ The merchandise now before the court was also bound together by the synthetic resin when subjected to heat and pressure. It, therefore, falls within the provisions for laminated products of which any synthetic resin is the chief binding agent.

■ Plaintiff claims that the merchandise is in sheets and it was so stipulated at the trial. However, according to the official papers, which were received in evidence, the merchandise was imported in rolls, 36 inches wide and 30 yards long, and 45 inches wide and 20 yards long. Mr. Schecter also referred to rolls, from which samples were taken. The Government's position is that the common meaning of a term is a question of law and that the stipulation here is not binding on the court. With this we are in agreement. United States v. National Carloading Corp., James S. Baker Import Co., 48 CCPA 70, C.A.D. 767; Julius Forstmann & Co. v. United States, 26 CCPA 336, C.A.D. 37; Borneo Sumatra Trading Co., Inc. v. United States, 56 Cust.Ct. 166, C.D. 2624 (rehearing granted).

In Norris Brothers v. United States, 43 Cust.Ct. 277, C.D. 2141, it was held that the terms "sheets or plates" and "rods, tubes, blocks, strips, blanks, or other forms" in paragraph 1539(b) were mutually exclusive and that rectangular pieces of a laminated product 40 inches long and 22 inches wide and 36 inches long and 22 inches wide were sheets or plates rather than blocks or strips.

■ Where Congress has distinguished "sheets" from "strips" or other forms, the courts have held that the term "sheets" means a broad general surface; that "sheets" are wide in comparison with their length and that "strips" are narrow in relation to their length. American Express Co. v. United States, 3 Ct.Cust.Appls. 475, T.D. 33121; Universal Shipping Co. et al. v. United States, 4 Ct.Cust.Appls. 245, T.D. 33479; Burgess Battery Co. v. United States, 19 Cust.Ct. 28, C.D. 1063, and cases and definitions cited; Lyons Transport v. United States, 36 Cust.Ct. 257, C.D. 1783. A strip does not cease to be a strip because it has been rolled up or is 3 miles long. United States v. Border Brokerage Company, 48 CCPA 38, C.A.D. 760.

It is to be noted that the provision in paragraph 1539(b) under which plaintiff claims is limited to "sheets or plates,"

whereas the following provision covers "other forms" as well as those enumerated. It is clear, therefore, that Congress intended the provision for "sheets or plates" to apply to those forms only. The merchandise here is not in the form of a "sheet" as that term is commonly understood and as construed by the courts. In fact, it is called "sheeting" on the invoice. Consequently, plaintiff's claim cannot be sustained.

█ The merchandise herein, while properly classifiable as a laminated product of which a synthetic resin is the chief binding agent, falls within the provision for strips or other forms and not the provision for sheets or plates. Therefore, the protest must be overruled without affirming the collector's classification.

Judgment will be entered accordingly.

OLIVER and WATSON, Judges, concur.