## UNITED CHINA & GLASS CO.
### v.
### UNITED STATES.
**C.D. 3637; Protest No. 65/22597–17629.**

United States Customs Court,
Third Division.
Dec. 10, 1968.

Stein & Shostak, Los Angeles, Cal. (Marjorie M. Shostak and Leonard M. Fertman, Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris and Andrew P. Vance, New York City, trial attys.), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

Plaintiff in this protest has abandoned all claims save the claim that merchandise, imported from Hong Kong, described in the entry invoice as "Glass Water Balls", assessed at 50 per centum ad valorem, under TSUS item 546.51, is properly dutiable at 28 per centum ad valorem, under TSUS item 748.20. Those competing tariff item classifications provide as follows:

Tariff Schedules of the United States (hereinafter TSUS), schedule 5, part 3:

Subpart C.—Glassware and Other Glass Products

\* \* \* \* \* \* \* \*

Articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients; smokers' articles, household articles, and art and ornamental articles, all the foregoing not specially provided for:

\* \* \* \* \* \* \* \*

Other glassware:

Valued not over $1 each:

| | | |
|---|---|---|
| 546.41 | Smokers' articles ................ | \* \* \* |
| 546.45 | Perfume bottles fitted with ground glass stoppers ................ | \* \* \* |
| 546.51 | Other ......................... | 50% ad val. |

TSUS schedule 7, part 7:

Subpart B.—Artificial and Preserved Flowers and Foliage; \* \* \*

\* \* \* \* \* \* \* \*

Artificial flowers, trees, foliage, fruits, vegetables, grasses, or grains, parts of the foregoing, and articles made of the foregoing (except articles provided for in item 748.15 or 748.40 of this subpart):

| | | |
|---|---|---|
| 748.20 | Wholly or almost wholly of plastics .. | 28% ad val. |
| 748.21 | Other ......................... | \* \* \* |

---

The meaning of the words "almost wholly of" in item 748.20 is defined, along with other terms, in TSUS General Headnotes and Rules of Interpretation, "9. *Definitions*." There it says that for the purposes of the schedules, unless the context otherwise requires:

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e. g., "furniture *of* wood", "woven fabrics *wholly of* cotton", etc.) have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

(ii) "wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; and

(iv) "in part of" or "containing" mean that the article contains a significant quantity of the named material.

With regard to the application of the quantitative concepts specified in subparagraphs (ii) and (iv) above, it is intended that the *de minimis* rule apply.

A schedule 7, part 7, subpart B, special headnote, further provides that:

1. The provisions of items 748.20 and 748.21 do not include—

(i) articles wholly or almost wholly of glass or ceramics;

\* \* \* \* \* \*

The articles, of which exhibit 1 in evidence is representative, were made in Hong Kong. Plaintiff catalogued the articles under the manufacturer's number 60301, and described them in its 1964 catalogue as:

60301 – DECORATIVE WATER BALL. 4 assorted 3¾″ x 3½″ glass ball filled with polyethylene floral bouquet and mounted on black plastic base. Striking decorative piece can be used as paperweight. Individually boxed with easy filling instructions included (shipped dry to save you freight charges). [Exhibit 2.]

We would add that the black plastic base threads on a neck which protrudes from the glass ball and is removable. When the base is removed, a rubber cap (plug) snugly fitted in the neck of the glass ball is exposed. The polyethylene floral bouquet (hereinafter plastic flowers) is attached to the rubber cap which holds the plastic flowers upright inside the glass ball. The articles are imported in a boxed container on which is pasted instructions on "How to fill it [glass ball] with water in order to magnify the flowers \* \* \* [by unscrewing the plastic cap base and pulling] out a little of the rubber cap by the edge to get a small hole and submerge the whole thing [article] in water until it is full." (Exhibit 1.) When the ball is filled with water, the rubber cap is put back to seal the water in and you are instructed to screw the black plastic cap base on tight. The total effect of the article is that of a floral bouquet inside a water filled ball on a black plastic stand.

The facts are not otherwise in dispute. Mr. Jerome Levy, associated with plaintiff firm for 43 years and now its vice president, testified. He stated that the imported articles can be used as a decorative piece or a paperweight. He had seen them used in homes and on display in the gift departments of various stores. His firm had never ordered glass balls without a decorative insert.

The sense of plaintiff's brief is that a glass ball on a plastic base with a decorative plastic flower insert is an article made of artificial flowers, wholly or almost wholly of plastic, provided for in item 748.20; that item 748.20 is relatively more specific than item 546.51 limited as item 546.51 is, to the articles therein described, not specially provided for, and that the material which imparts the essential character of the article, as defined in general headnote 9(f), is the plastic flowers. Defendant argues the contrary and suggests that articles made of artificial flowers must be in chief value of artificial flowers as the phrase "made of" has been construed in the Tariff Act of 1930 and acts prior thereto. May Co. et al. v. United States, 25 CCPA 227, T.D. 49336. We do not discuss defendant's latter contention as we believe the case turns directly on the point whether the articles are "almost wholly of" plastic under item 748.20, as the relevant term "almost wholly of" is defined in general headnote 9(f). The term "almost wholly of", as defined in the tariff schedules, is new matter not previously litigated.

The clause "not specially provided for" in item 546.51, of which plaintiff makes a point, lessens the relative specificity of that item only if item 748.20 is equally applicable to the articles involved. United States v. Alltransport, Inc., 44 CCPA 149, C.A.D. 653. The article, as we described it above, is composed of glass (the ball), plastic (flower insert and outside base), and rubber (inside cap). Under general headnote 9(f) the article may not be classified an article made of artificial flowers, almost wholly of plastic, item 748.20, unless the plastic materials impart the essential character of the article. The best evidence

of the essential character of the article is the representative sample. (Exhibit 1.) Ace Importing Co., Inc. v. United States, 44 Cust.Ct. 468, Abstract 64185 (paperweights); S. S. Kresge Co., et al. v. United States, 46 CCPA 100, C.A.D. 707 (paperweights). The character of an article is that attribute which strongly marks or serves to distinguish what it is. Its essential character is that which is indispensable to the stucture, core or condition of the article, i. e., what it is. Webster's Third New International Dictionary, 1966 edition. The article, exhibit 1, has several distinguishing characteristics, namely, the glass ball and decorative insert of plastic flowers. "[T]he factors to be taken into consideration in determining whether certain merchandise is to be classified under the relevant provision for artificial flowers, fruits, etc., are not limited to 'closeness of simulation and suitability to the ornamental uses of real flowers' but also '[include] others such as *size*, primary function, other recognized names, uses and applicable tariff act provisions, and *ordinary common sense*." [Emphasis quoted.] "The situation must be reviewed as a whole." Robaire Import Company v. United States, 60 Cust.Ct. 176, C.D. 3307.

The indispensable and distinguishing part, that which imparts the essential character of the structured article in this litigation is, in our opinion, the glass ball. We say this because, if we take the glass ball away, we are left with (1) some plastic flowers set in a rubber cap and (2) a plastic base, neither of which has any utility, so far as the record shows, without the glass ball. Indeed, any decorative insert could quite easily be substituted in place of the plastic flowers without destroying the essential character of the article as manifest in the glass ball. See the decorative inserts in the quite similar articles before the court in Ace Importing Co., Inc. v. United States, supra, and S. S. Kresge Co. et al. v. United States, supra. The invoice and catalogue descriptions, "Glass Water Balls" and "Decorative Water Ball", are also persuasive indicia that the essential character of the article is imparted by the glass ball. For it is not uncommon that an article is called by the name denoted by its essential character, viz, chair, table, etc. When plaintiff testified that the article can be used as a "paperweight", he called it by a more sophisticated name derived from the use of the article suggested in the catalogue description. Use of the article as a paperweight would, we think, be impractical unless the ball was filled with water. So, no matter how sophisticated we get, we come back to the fact that the character of the article is imparted by the glass ball essentially more so than the decorative plastic flowers.

The articles of this protest being "almost wholly of" glass rather than "almost wholly of" plastic, as that relevant term is defined in general headnote 9(f), are excluded from classification under item 748.20, schedule 7, part 7, subpart B headnote, supra.

The abandoned protest claims are dismissed. The claim under TSUS item 748.20 is overruled.

Judgment will be so entered.