(C.D. 4001)

LARRY B. WATSON CO., A/C DECORATION PRODUCTS CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 22, 1970)

*Stein & Shostak* (*Arthur Schwimmer* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert T. Richardson* and *Peter J. Baskin*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise, the subject of this protest, consists of rolls of polyvinyl chloride film, colored or metallized on one or both

sides with shiny lacquer paint, silver or aluminum. It was imported from England in 1964, and is used in the manufacture of tinsel garlands and other decorations, primarily for display or in decorating Christmas trees.

The merchandise was classified as other articles, not specially provided for, of rubber or plastics, under item 774.60 of the Tariff Schedules of the United States, and was assessed with duty at the rate of 17 per centum ad valorem. Plaintiff protests, and claims that it is properly classifiable under item 771.42 of the Tariff Schedules of the United States, as film, strips or sheets, almost wholly of plastic, and therefore dutiable at the rate of 12.5 per centum ad valorem.

The pertinent statutory provisions may be set forth as follows:

"Articles not specially provided for, of rubber or plastics:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

774. 60      Other_____ 17% ad val."

"Subpart B headnotes:
1. This subpart covers rubber or plastics products (other than waste or scrap) in the following forms:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

(b) film strips, sheets, and plates, all the foregoing (whether or not printed, embossed, polished, or otherwise surface-processed) made or cut into rectangular pieces over 21 inches in width and over 51 inches in length; * * *

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Not of cellulose plastics materials:
Film, strips, and sheets, all the foregoing which are flexible and unsupported:

771.40          Made in imitation of patent leather _____ 5.5% ad. val.

771.42          Other _____ 12.5% ad val."

Also pertinent to the question presented is General Headnote 9(f)(iii) which provides:

"9. Definitions. For the purposes of the schedules, unless the context otherwise requires—

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

(f) the terms 'of', 'wholly of', 'almost wholly of', 'in part of' and 'containing', when used between the description of an article and a material (e.g., 'furniture of wood', 'woven fabrics, wholly of cotton', etc.), have the following meanings:

\* \* \* \* \* \* \*

(iii) 'almost wholly of' means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; \* \* \*"

The record herein consists of the testimony of one witness for the plaintiff, and a stipulation that the merchandise contains polyvinyl chloride, a plastic material which is not cellulosic. Plaintiff also introduced two exhibits. Exhibit 1, except for size and length, is a representative sample of the imported merchandise invoiced as "metallised" and "colour lacquered". Exhibit 2 is a representative sample of a product known as "tinsel garland" which is manufactured from the imported merchandise.

Plaintiff's witness, Mr. Karre Breistein, testified that he was the owner-operator of Decoration Products Co., and that his company manufactured and sold decorations. Mr. Breistein, who has a bachelor of science degree from the Massachusetts Institute of Technology, stated that he is familiar with the merchandise at bar, and that it is polyvinyl chloride film. The plaintiff does not import decorations, but only the raw material, i.e., the rolls of polyvinyl chloride film from which the decorations are made.

Mr. Breistein testified that the items described on the invoice as "metallised" and "colour lacquered" were manufactured through a process whereby:

"after the film is in roll form, following extrusion or calendering, it is introduced into a vacuum chamber, and when the vacuum gets down far enough, aluminum is boiled off and, in the process, it is deposited on the film."

He added that the film might then be colored on one or both sides by spraying or printing.

The witness testified that the merchandise did not undergo any other processing prior to importation; that it had not been cut into non-rectangular shapes; that it was not supported; that it was flexible; that it was imported in rolls 24 to 30 inches wide and 1,800 to 3,600 feet long; and that it was not in imitation of patent leather.

He testified that the material was desirable for his purposes, i.e., the manufacture of decorations, because of its ease of die cutting, its flexibility, and because it was flameproof. These qualities, he stated, distinguished it from other products used for the same purpose. The merchandise is used solely for the manufacture of decorations. After

importation the plaintiff slits the merchandise into narrow rolls, fringes, die-cuts and twists it, and sells the resulting product, known as tinsel garlands for use as decorations. Mr. Breistein testified that while the coloring of the decorations is as important to the ultimate consumer, as is their flexibility, the coloring of the imported material has no bearing on his process of manufacture. He also stated that were it not cheaper to buy the film already colored, he could color it himself after importation.

In its imported condition, in the opinion of the witness, the material that gives the merchandise its essential character is the "plastics, the polyvinyl chloride film."

The defendant concedes that if the essential character of the imported polyvinyl chloride film is imparted by its plastic content, as contended by plaintiff, the protest should be sustained, and the merchandise should be reliquidated under the claimed provision, i.e., item 771.42 of the tariff schedules. The defendant urges that plaintiff's position is without merit because, in its view, it is not the plastic content which imparts its essential character to the imported merchandise, but rather "its color and shiny metallic finish." In support of its position, the defendant submits that the "essential character" of the merchandise "derives not from the nature of the materials comprising it, but from its visual appearance, which is imparted by the metallizing."

If the court were to find that the "metallizing" is not the "essential character" of the merchandise, the defendant suggests that "neither the color and shiny, metallic finish nor the plastic content in and of itself imparts the essential character." Under such circumstances, defendant suggests that "no one single feature or component imparts the object's essential character, but rather its essential character is imparted by a combination of components."

The defendant indicates that plaintiff's witness testified that the plastic gives the imported merchandise its flexibility, which is an essential consideration in the manufacture of the intended end product. Defendant also points out that plaintiff's witness readily admits that the color and shiny, metallic finish is likewise important "in the sale of the intended product." From this testimony, the defendant concludes that the "imported merchandise's essential character is not imparted solely by plastic", and therefore "the imported merchandise is not 'almost wholly of' plastic, and the plaintiff's claim is incorrect."

Item 774.60 of the tariff schedules, under which the merchandise at bar was classified, covers only articles "not specially provided for". Clearly, therefore, this classification is erroneous if the plaintiff is correct in its assertion that the merchandise is "provided for" in item

771.42. See *United States* v. *Alltransport, Inc.*, 44 CCPA 149, 154, C.A.D. 653 (1957).

At the outset it must be made clear that the merchandise in issue is not the tinsel garland that is manufactured by the plaintiff from the imported merchandise. Plaintiff's exhibit 2 is a representative sample of the tinsel garland sold by plaintiff to its customers, but that is not the controverted merchandise. Surely, it "is elementary that duty must be assessed upon imported merchandise in its condition at the time of its importation." *United States* v. *Lo Curto & Funk*, 17 CCPA 342, 344, T.D. 43777 (1929). See *United States* v. *Citroen*, 223 U.S. 407, 414–415, 32 S. Ct. 259 (1912) ; *Engis Equipment Company* v. *United States*, 62 Cust. Ct. 29, 34, C.D. 3670, 294 F. Supp. 964 (1969).

A representative sample of the imported merchandise is plaintiff's exhibit 1, the lacquered polyvinyl chloride film, and not the tinsel garland. This is important because whether the coloring matter rather than plastic imparts the essential character to the tinsel garland is not the issue before the court. The issue of classification for duty purposes pertains not to tinsel garland but to the plastic film strips in rolls imported from England.

That the imported merchandise, i.e., the polyvinyl chloride film with shiny lacquer paint, meets all but one of the conditions or prerequisites for classification under item 771.42 cannot be seriously disputed. The merchandise is rectangular and is imported in rolls 24 to 30 inches wide and 1800 to 3600 feet long. Clearly, therefore, it is in rectangular pieces over 21 inches in width and over 51 inches in length. Since it is narrow in relation to its length it conforms to the common meaning of the term "strip". *Sommers Plastic Products Co.* v. *United States*, 58 Cust. Ct. 409, C.D. 3002, 268 F. Supp. 490 (1967). Also, as stated in *United States* v. *Border Brokerage Company*, 48 CCPA 38, 40, C.A.D. 760 (1960), "[a] strip does not cease to be a strip merely because it is rolled up." There can be no doubt that the merchandise is flexible, unsupported, and that it is not made in imitation of patent leather. It is likewise clear that the plastic of which the merchandise is made, i.e., polyvinyl chloride, is not cellulosic.

The only element or condition of the merchandise upon which the parties may reasonably differ pertains to whether the strips are "almost wholly of" plastics as those words are defined in General Headnote 9(f)(iii), *supra*. The question presented may therefore be said to be whether "the essential character of the article is imparted by the named material", i.e., plastics.

It must be noted that under General Headnote 9(f)(iii) an article is "almost wholly of" a named material "notwithstanding the fact that significant quantities of some other material or materials may be

present." In summary, if the essential character of the imported merchandise is imparted by the polyvinyl chloride, it is "almost wholly of" plastics, and therefore properly classifiable under item 771.42 as claimed by plaintiff.

The definition contained in General Headnote 9(f)(iii), and more particularly the words "almost wholly of", were first judicially construed by Judge Landis in the case of *United China & Glass Co.* v. *United States*, 61 Cust. Ct. 386, C.D. 3637, 293 F. Supp. 734 (1968). The merchandise in the *United China & Glass Co.* case consisted of a glass water ball mounted on a black plastic base with a plastic floral bouquet insert inside the ball. It was used as a decorative piece or as a paperweight. Plaintiff therein claimed that the articles invoiced as "Glass Water Balls" were dutiable under item 748.20 in that they were allegedly "almost wholly of plastics." The court found that the articles were not "almost wholly of plastics" and overruled the protest. In finding that the essential character of the articles was imparted by the glass ball, the court made the following statements:

> "The character of an article is that attribute which strongly marks or serves to distinguish what it is. Its essential character is that which is indispensable to the structure, core or condition of the article, i.e., what it is. Webster's Third New International Dictionary, 1966 edition. The article, exhibit 1, has several distinguishing characteristics, namely, the glass ball and decorative insert of plastic flowers. * * *
>
> "The indispensable and distinguishing part, that which imparts the essential character of the structured article in this litigation is, in our opinion, the glass ball. We say this because, if we take the glass ball away, we are left with (1) some plastic flowers set in a rubber cap and (2) a plastic base, neither of which has any utility, so far as the record shows, without the glass ball. Indeed, any decorative insert could quite easily be substituted in place of the plastic flowers without destroying the essential character of the article as manifest in the glass ball. * * *" 61 Cust. Ct. at 389.

The inquiry, therefore, pertains to "that which is indispensable to the structure, core or condition of the article, i.e., what it is." As defined in *Webster's New World Dictionary of the American Language*, College Edition, 1962, "essence" is "that which makes something what it is."

Notwithstanding the importance or contribution of the color and shiny metallic finish of the imported merchandise, the court finds that its essential character is imparted by its plastic content. Whereas in the *United China & Glass Co.* case the "essential character of the article is imparted by the glass ball" (61 Cust. Ct. at 389), in the case at bar it is imparted by the plastic.

The uncontradicted testimony reveals clearly that the characteristics of the imported film which make it desirable for the manufacture of decorations are its flexibility, its ease of die cutting and the fact that it is flameproof. These are the features or characteristics which distinguish it from other merchandise used for the same purpose, and these qualities are imparted by the polyvinyl chloride. If the color lacquer or metallic deposit were removed, or not added to the finished product, one would still have a basic raw material that could be fully utilized for the manufacture of decorations. Without minimizing the importance of the lacquer, it may be pointed out that the coloring could be added after the importation, and that the reason it is imported colored "is a matter of economics", i.e., "it is cheaper."

The witness recognized the merchandise as a "new and revolutionary process in making decorations." The material or merchandise to which he referred, however, was not the coloring matter but the "polyvinyl chloride film". To remove the "polyvinyl chloride film" would destroy the very thing sought for the "new and revolutionary process". It would seem clear that it is the film that is "indispensable to the structure, core or condition of the article."

The defendant, in its brief, calls the court's attention to the invoices which refer to the imported merchandise as "colour lacquered", and that the record shows in numerous places that the merchandise was described as "metallised", "colour lacquered", "metallised on one side" and the like. Defendant deems these references to the color and coloring matter to be "persuasive because 'it is not uncommon that an article is called by the name denoted by its essential character * * *' *United China & Glass Co., supra* at 390." Admittedly, the reference to the color of the merchandise is helpful in describing the merchandise, but it does not state what is being described. An examination of the invoice descriptions reveals that the reference to color is not made in isolation. Rather, the color is mentioned together with the merchandise described. For example, one "Special Customs Invoice" stated "Metallised PVC". This particular invoice contains the additional notation, "See Specification Attached". The attached invoice contains an initial description of "1 Roll 26″ wide G.60. UPVC colour lacquered red on 2 sides." As in other items therein contained, the merchandise described would seem to be UPVC, or, as in the description on the "Special Customs Invoice", the PVC, i.e., polyvinyl chloride.

There can be no doubt, therefore, that within the meaning of General Headnote 9(f)(iii), the "article", the "essential character" of which is in issue, is the polyvinyl chloride film. By the very definition of the phrase "almost wholly of" contained in that headnote, the fact

that "significant quantities" of coloring matter may be present on the polyvinyl chloride strips does not, in any way, prevent the "essential character of the article" being "imparted by the named material", i.e., the plastic.

In view of the finding that the essential character of the merchandise is imparted by the plastic, the court does not agree with defendant's suggestion that "no one single feature or component imparts the object's essential character."

The court holds that the controverted merchandise is "almost wholly of" plastics, as that phrase is defined in General Headnote 9(f)(iii), and is, therefore, properly classifiable under item 771.42 of the Tariff Schedules of the United States with duty at the rate of 12.5 per centum ad valorem.

For the foregoing reasons, the protest is sustained. Judgment will issue accordingly.