The UNITED STATES, Appellant,

v.

CANADIAN VINYL INDUSTRIES, INC., Appellee.

Customs Appeal No. 76–11.

United States Court of Customs and Patent Appeals.

May 12, 1977.

 

82, TSUS, as classified. Appellee alternatively claimed classification under items 771.42, 774.60 and 355.85. We affirm.

The pertinent statutory provisions involved in this appeal, with rates of duty in effect at time of importation, are as follows:

General Headnotes and Rules of Interpretation:

\* \* \* \* \* \* \*

9. <u>Definitions</u>. For the purposes of the schedules, *unless the context otherwise requires—*

\* \* \* \* \* \* \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e. g., "furniture <u>of</u> wood", "woven fabrics, <u>wholly of</u> cotton", etc.), have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

\* \* \* \* \* \* \*

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; . . .

\* \* \* \* \* \* \*

**SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS**

<u>Schedule 3 Headnotes</u>

\* \* \* \* \* \* \*

2. *For the purposes of the tariff schedules—*

(a) the term "<u>textile materials</u>" means—

(i) the fibers (cotton, other vegetable fibers, wool and hair, silk, and manmade fibers) provided for in part 1 of this schedule,

(ii) the yarn intermediates and the yarns provided for in part 1 and part 4 (elastic yarns) of this schedule,

(iii) the cordage provided for in part 2 and part 4 (elastic cordage) of this schedule,

(iv) the fabrics provided for in part 3 and part 4 of this schedule,

(v) braids, as defined in headnote 2(f), <u>infra</u>, and

(vi) except as provided by headnote 5, articles produced from any of the foregoing products;

\* \* \* \* \* \* \*

4. *For the purposes of the tariff schedules—*

\* \* \* \* \* \* \*

(b) In determining the component fibers of chief value in coated or filled, or laminated, fabrics and articles wholly or in part thereof, the coating or filling, or the non-textile laminated substances, shall be disregarded in the absence of context to the contrary.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, John J. Mahon, New York City, attorneys of record, for appellant.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellee, Michael Stramiello, Jr., James S. O'Kelly, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN and MILLER, Judges, PHILIP NICHOLS, Judge, United States Court of Claims.

NICHOLS, Judge.[1]

This appeal is from the judgment of the United States Customs Court, C.D. 4626, 408 F.Supp. 1377, 76 Cust.Ct. 1, sustaining appellee's claim that its imported merchandise is entitled to classification under item 771.40, Tariff Schedules of the United States (TSUS), instead of under item 355.-

---

[1] Judge of the United States Court of Claims sitting by designation pursuant to 28 U.S.C. § 293(a).

5. For the purposes of parts 5, 6 and 7 of this schedule and parts 1 (except subpart A), 4, and 12 of schedule 7, in determining the classification of any article which is wholly or in part of a fabric coated or filled, or laminated, with nontransparent rubber or plastics (which fabric is provided for in part 4C of this schedule), the fabric shall be regarded not as a textile material but as being wholly of rubber or plastics to the extent that (as used in the article) the nontransparent rubber or plastics forms either the outer surface of such article or the only exposed surface of such fabric.

Part 4.—Fabrics of Special Construction Or For Special Purposes; Articles of Wadding Or Felt; Fish Nets; Machine Clothing

\* \* \* \* \* \* \*

Subpart C.—Wadding, Felts, and Articles Thereof; Fish Netting And Nets; Artists' Canvas; Coated or Filled Fabrics; Hose; Machine Clothing; Other Special Fabrics

Subpart C headnotes:

1. The provisions of this subpart do not cover—

\* \* \* \* \* \* \*

(vii) other articles specially provided for in schedule 7 or elsewhere.

2. For the purpose of the tariff schedules—

\* \* \* \* \* \* \*

(c) the provisions in this subpart for fabrics, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics (items 355.65–85), cover products weighing not over 44 ounces per square yard without regard to the relative quantities of the textile fibers and the rubber or plastics material, but do not cover products weighing over 44 ounces per square yard unless they contain more than 50 percent by weight of textile fibers.

\* \* \* \* \* \* \*

Woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics:

\* \* \* \* \* \* \*

Of man-made fibers:
355.81 Over 70 percent by weight of rubber of plastics . . . . . . . . . . .
355.82 Other . . . . . . . . . . . . . . . . . . . . . . . 12.5¢ per lb. + 15% ad val.

\* \* \* \* \* \* \*

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

\* \* \* \* \* \* \*

PART 12.—RUBBER AND PLASTICS PRODUCTS

\* \* \* \* \* \* \*

Subpart B.—Rubber and Plastics Waste and Scrap; Rubber and Plastics Film, Strips, Sheets, Plates, Slabs, Blocks, Filaments, Rods, Tubing and Other Profile Shapes

\* \* \* \* \* \* \*

Subpart B headnotes:

1. This subpart covers rubber or plastics products (other than waste or scrap) in the following forms:

\* \* \* \* \* \* \*

(b) film, strips, sheets, and plates, all the foregoing (whether or not printed, embossed, polished, or otherwise surface-processed) made or cut into rectangular pieces over 15 inches in width and over 18 inches in length; \* \* \*

\* \* \* \* \* \* \*

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

\* \* \* \* \* \* \*

Not of cellulosic plastics materials:
Film, strips, and sheets, all the foregoing which are flexible:
771.40 Made in imitation of patent leather . . . . . . . . . . . . . . . . . . . . 4% ad val.

The legislation under which this interrelated maze of provisions was devised was known, somewhat ironically, as the Customs *Simplification* Act of 1954, 68 Stat. 1136, Pub.L. 768, 83rd Cong. 2d Sess. [Emphasis supplied.]

The merchandise, invoiced as "Polyurethane 305," consists of flexible sheets of a laminated material imported in rolls. The material has a glossy polyurethane "skin" on one side and a nylon fabric on the reverse side. The evidence of record (four exhibits and the testimony of three witnesses) unequivocally establishes that the principal and only use of the merchandise is as a substitute for patent leather in the construction of footwear, the polyurethane skin being always outside. Similar material is sometimes used in ladies handbags.

The Customs Court read General Headnote 9(f)(i) in conjunction with the language "of textile materials" in the superior heading to item 355.82 to require that the merchandise be wholly or in chief value of the nylon fabric as a prerequisite for proper classification under item 355.82. General Headnote 10 of the TSUS defines chief value as follows:

(f) an article is in chief value of a material if such material exceeds in value each other single component material of the article.

Since the testimony established the costs of the components of the nylon fabric and

polyurethane coating as 51 cents and $1.13, respectively, the court held that the merchandise did not meet the chief value test and was, therefore, improperly classified. The court then turned to appellee's proposed classification of the merchandise under item 771.40. It held that the merchandise was "almost wholly of" plastics, as the quoted term is defined in General Headnote 9(f)(iii), because the essential character thereof was imparted by the polyurethane "skin." The court also noted the unrebutted testimony of record which established that the merchandise was made in imitation of selected varieties of patent leather in holding that classification under item 771.40 was proper.

Appellant contends that the court erred in applying the chief value test of General Headnote 9(f)(i) to the whole (as opposed to the nylon portion) of the merchandise. It argues that the language of the superior heading to items 355.65–.85, headnotes 2(a)(iv) and 4(b) to schedule 3, headnote 2(c) to part 4C of schedule 3, and amendments to schedules 3 and 7 of the TSUS by the Tariff Schedules Technical Amendments Act of 1965 (TSTAA) [2] and related legislative history, all specifically provide for the classification of the merchandise under item 355.82.

Appellant also contends that classification under item 771.40 is improper because the polyurethane "skin" does not impart the essential character to the merchandise. Thus, it is not "almost wholly of" plastics within the meaning of General Headnote 9(f)(iii). Alternatively, appellant contends that if the merchandise is described under both items 355.82 and 771.40, then the rule of relative specificity requires classification under item 355.82. Finally, appellant argues that if this court finds both provisions equally applicable, even under the rule of relative specificity, item 355.82 must prevail by virtue of General Interpretative Rule 10(d), which provides:

 (d) if two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest * * *.

Appellee contends that the Customs Court properly applied a chief value test in holding the merchandise improperly classified under item 355.82. It also contends that the evidence of record supports the court's finding that the merchandise is "almost wholly of" plastics and made in imitation of patent leather. Thus it argues that classification under item 771.40 was proper. It also contends that if classification under item 771.40 is proper, then headnote 1(vii) to part 4C of schedule 3 excludes classification of the merchandise in part 4C.

Headnote 1(vii) to part 4C of schedule 3 provides the proper starting point for analyzing the present controversy. That headnote excludes from classification in part 4C "other articles specially provided for in schedule 7 or elsewhere." A proper inquiry is whether the Customs Court correctly held that the merchandise is properly classified under item 771.40. If it did, then perforce the merchandise cannot be properly classified under item 355.82.

The evidence and admissions of record unquestionably establish that the imported merchandise is a film or sheet of laminated material in rectangular pieces over 15 inches in width and over 18 inches in length, as prescribed in the superior heading to item 771.40. The polyurethane component is not of cellulosic plastics material as also therein prescribed, and, as noted, the merchandise was made in imitation of patent leather. A crucial question is whether the merchandise is "almost wholly of" polyurethane. Headnote 9(f)(iii) requires that to be "almost wholly of" polyurethane the merchandise must have its essential character imparted by the polyurethane, notwithstanding the fact that a nylon backing is also present. The record amply supports the Customs Court in holding that the polyurethane supplies this essential character. It is the distinctive visual and tactile quality of polyurethane which gives the merchandise its ability to be used

2. 79 Stat. 933, Pub.L. 89–241 (Oct.1965).

as an imitation patent leather. It is in fact indispensable. In this regard the polyurethane in this case is like the glass water ball in *United China & Glass Co. v. United States*, C.D. 3637, 293 F.Supp. 734, 61 Cust.Ct. 386 (1968). The nylon fabric backing, although imparting several desirable properties to the merchandise, is not indispensible. When footwear is constructed, only the polyurethane is visible. The various flexing and cracking tests which were performed on the merchandise to determine its suitability as an imitation patent leather all related to the durability of the glossy surface. There is no evidence of record showing a like concern over the durability of the fabric backing. In fact, although some form of backing is usually applied to the polyurethane, the fabric backing need not be of nylon; other material can be and is used, and sometimes the polyurethane is sold unbacked.

We have reviewed *Marshall Co. v. United States*, C.D. 4291, 334 F.Supp. 643, 67 Cust.Ct. 316 (1971), cited by appellant. See also *A. N. Deringer, Inc. v. United States*, 66 Cust.Ct. 378, C.D. 4218 (1971), and *Larry B. Watson Co. v. United States*, 64 Cust.Ct. 343, C.D. 4001 (1970). Our first observation is that these prior cases are of little help in determining that which supplies the essential character to imported merchandise. These determinations are essentially factual and vary from case to case. Moreover, *Marshall* is inapposite to the present controversy. In *Marshall* a rayon fabric coated on both sides with rubber was held not to be almost wholly of rubber because the rubber did not impart the essential character to the imported merchandise. The involved merchandise was used in the manufacture of packing materials such as gaskets, washers, and packing heads, and diaphragm material. The court noted that the fabric portion gave burst strength and dimensional stability to the merchandise, preventing the stretching or tearing of the rubber compounds, finding these qualities to be *equally essential* to those imparted by the rubber in

view of the ultimate use of the products. Here, as noted, there is no evidence that the polyurethane and the nylon fabric are equally essential and all the evidence is contrary. In our view it is the polyurethane alone which makes the imported merchandise an imitation of patent leather.

Appellant argues that classifying a "supported" plastic under item 771.40 runs counter to the legislative history [3] relating to an amendment of that provision. Prior to the enactment of the TSTAA the superior heading to item 771.40 read as follows:

 Film, strips, and sheets, all the foregoing which are flexible and unsupported:

The TSTAA amended this superior heading to delete the words "and unsupported." On its face, the amendment was of a broadening nature and caused the amended superior heading to encompass both supported and unsupported rubber or plastics. Generally, a change in the language of a statute indicates an intent to change its meaning. *United States v. American Brown Boveri Electric Corp.*, 17 CCPA 329, T.D. 43776 (1929). However, the legislative history surrounding this amendment states:

Subsection (c) would amend the article description for items 771.40–771.42 which cover rubber and non-cellulosic plastics in the form of film, strips, and sheets "which are flexible and unsupported." It is proposed to strike out the words "and unsupported." These words are surplusage. Where such film, strips, and sheets are supported, textile fabrics are the usual supporting media and such products are provided for in items 355.65–355.85.

Despite lending apparent support for appellant's position, we are not prepared to give this report overriding significance. We do not normally use an indication of Congressional intent alone to overcome the clear meaning of the words of a statute. *American Customs Brokg. Co. v. United States*, C.A.D. 1002, 433 F.2d 1340, 58 CCPA 45

3. Report of the Ways and Means Committee of the House of Representatives, H.R.Rep. No. 342, 89th Cong. 1st Sess. 13 (1965).

(1970); *C. J. Tower & Sons v. United States*, 41 CCPA 195, C.A.D. 550 (1954); *Yardley & Co. v. United States*, 41 CCPA 85, C.A.D. 533 (1953). Particularly where, as here, the legislative history itself is not entirely free of ambiguity. Although Congress seemingly thought that *all* textile fabric supported films, sheets, etc. of rubber or non-cellulosic plastics were provided for under item 355.65–.85, the TSUS, particularly headnote 2(c) to part 4C of schedule 3, clearly provides otherwise. "In resolving ambiguity we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process." *Cass v. United States*, 417 U.S. 72, 83, 94 S.Ct. 2167, 2173, 40 L.Ed.2d 668 (1974). We are not prepared to alter the clear meaning of the statute because of an ambiguous legislative history.

Appellant also contends that the imported merchandise is not an "article" which is embraced by part 12 of schedule 7, noting that headnote 2(a)(vi) of schedule 3 and headnote 5 of schedule 3 combine to exclude only certain articles made from the fabrics provided for in part 4C of schedule 3 from the textile provisions of schedule 3. As previously noted, headnote 1(vii), which specifically covers part 4C of schedule 3, also excludes from that part "articles specially provided for in schedule 7 or elsewhere." The articles which are excluded from schedule 3 by virtue of the headnotes, says appellant, are finished products such as suitcases, gloves, etc., as discussed in the legislative history cited above concerning the TSTAA which added headnotes 2(a)(vii) and 5 to schedule 3:

> Subsection (a) would amend the definition of "textile materials" in headnote 2(a) of schedule 3. Under subparagraph (iv) of headnote 2(a) the fabrics in question are specifically identified as "textile materials". The proposed amendment takes into account the consideration mentioned above that the textile characteristics of these fabrics may be completely lost in the final product. For example, simulated leather suitcases and gloves made of a "supported" vinyl bear no outward resemblance to a textile product.

Thus, the proposed amendment of headnote 2(a) would exclude such fabrics from the defined concept of "textile materials" and provide for their being regarded as wholly of rubber or plastics to the extent that, as used in the luggage, gloves, or other article made therefrom, non-transparent rubber or plastics form either the outer surface of the article or the only exposed surface of the fabric.

However, we find no basis in the statute or even in the cited legislative history to read the word "article" in such restrictive manner. Although finished products such as gloves and luggage are discussed in the legislative history as examples of "articles," there is no narrowing definition given therein for the term. In our view the films, strips, sheets, etc. enumerated in the superior heading to item 771.40 are all articles which are excludable from schedule 3 by virtue of headnote 1(vii) to part 4C of schedule 3, provided they meet the other classification requirements in issue. This view, which is contrary to that expressed by the court in *Marshall*, supra, is reinforced by the Tariff Classification Study, Submitting Report (1960) (TCS), Schedule 7, p. 440, which states:

> [T]he proposed provisions of part 12 [of schedule 7] do not distinguish between products on the basis of whether they are or are not made into finished or partly finished articles. Objective distinctions based on specified dimensions have been substituted.

When specifically discussing part 12B of schedule 7 and its related headnotes, the above TCS at 450 states:

> The provisions of headnotes 1 and 2 of this subpart treat objectively with the existing problem of differentiating between plastic products which have and have not "been made into finished or partly finished articles." The proposed distinctions are based on dimensions and the type of processing involved.

In view of the above, we hold that the imported merchandise was properly classified under item 771.40 by the Customs Court. As a result, the imported merchan-

dise is properly excluded from part 4C of schedule 3 by virtue of headnote 1(vii) thereto. Our conclusion does not require support of the chief value test which was applied by the Customs Court in holding that classification of the imported merchandise under item 355.82 was improper. Assuming appellant is right that Congress did not mean the chief value test to govern the classification of laminated fabrics of textile and plastic, we think it clearly did mean the "almost wholly" test to govern here, and the contrary conclusion would be anomalous and a trap for unwary importers.

The judgment of the Customs Court is *affirmed.*

MILLER, Judge, dissenting.

As will be developed below, the majority opinion flies in the face of the clearly expressed intent of Congress that products such as the involved merchandise be classified under items 355.65–.85. It refuses to follow that Congressional intent on the basis of a bald assertion, premised on reading a portion of a Congressional committee report out of context, that "the legislative history itself is not entirely free of ambiguity" (the asserted "ambiguity" has nothing to do with the intent specifically expressed), and, further, by finding one provision of the statute to be "clear," without considering the statute as a whole as required by a basic rule of statutory construction long ago prescribed by the Supreme Court. Such disdain for the Congressional intent to the relationship that should prevail between the coordinate branches of our government—a relationship which this court has long endeavored to maintain by its adherence to the principle that the master rule in the construction of statutes is to so interpret them as to carry out the legislative

intent. *Brecht Corp. v. United States,* 25 CCPA 9, 13, T.D. 48977 (1937); *United States v. Clay Adams Co.,* 20 CCPA 285, 288, T.D. 46078 (1932); *Proctor & Gamble Manufacturing Co. v. United States,* 19 CCPA 415, 418, T.D. 45578 (1932); *L. R. Markell v. United States,* 16 Ct.Cust.App. 518, 520 (1929).

Unless there is an express exclusion of a fabric, coated or filled with rubber or plastics material, such as where the fabric is in the form of an "article" specially provided for in Schedule 7,[1] such fabric is properly classified in Schedule 3. Since appellee's merchandise (rolls of laminated fabric) is neither an "article" excluded from coverage under Schedule 3 by Subpart C headnote 1(vii) nor a fabric excluded from items 355.-65–.85 by Subpart C headnote 2(c),[2] the merchandise was properly classified in Schedule 3 and, more particularly, under item 355.85 as contended by appellant.

The majority opinion relies on Subpart C headnote 1(vii) of Part 4 of Schedule 3 in affirming the Customs Court's classification of appellee's merchandise under Schedule 7, basing its reliance on the erroneous conclusion that the merchandise is an "article." It states that there is "no basis" in the statute or the legislative history to read the word "article" to mean a finished product, such as suitcases and gloves. However, Subpart C headnote 1(vi) lists "hair felt, and articles thereof," thus drawing a distinction between an "article" and its basic material. Moreover, the legislative history makes it abundantly clear that "article" means a finished product, as distinguished from the fabric from which it is made. The House Ways and Means Committee Report[3] states:

Textile fabrics which have been coated or filled or laminated with rubber or plas-

1. See Subpart C headnote 1(vii) of Part 4 of Schedule 3.

2. Subpart C headnote 2(c) of Part 4 of Schedule 3 provides as follows:
 (c) the provisions in this subpart for fabrics, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics (items 355.65–.85), cover products weighing not over 44 ounces per square yard

without regard to the relative quantities of the textile fibers and the rubber or plastics material, but do not cover products weighing over 44 ounces per square yard unless they contain more than 50 percent by weight of textile fibers.

3. H.R.Rep. No. 342, 89th Cong., 1st Sess. 10–13 (1965).

tics are made to many specifications for a wide variety of uses. . . . The vinyl-covered fabrics (sometimes referred to as "supported" vinyls) are often made in finishes which simulate leather. For some purposes, the rubber or plastics may cover both surfaces of the textile fabric, but for most purposes the rubber or plastics is applied to one surface only. Usually the rubber or plastic is opaque and completely obscures the textile fibers or yarns in the fabrics, but occasionally it is transparent and does not do so. These rubber- or plastic-covered fabrics are used in making *rainwear, hunting jackets, footwear, headwear, gloves, luggage, handbags, furniture, and other articles.* In the final product, the "textile" surface of the fabric may form the outer surface of the article or the only exposed surface of the fabric, thereby lending to the article to the extent used therein the essential characteristic of a woven or knit textile fabric, or, on the other hand, such surface may form the inner surface of the article or be hidden or buried so that it is only the rubber- or plastic-covered surface which gives character to the finished product.

. . . . .

Subsection (a) would amend the definition of "textile materials" in headnote 2(a) of schedule 3. Under subparagraph (iv) of headnote 2(a) the fabrics in question are specifically identified as "textile materials." The proposed amendment takes into account the consideration mentioned above that the textile characteristics of these fabrics may be completely lost in the final product. For example, simulated leather suitcases and gloves made of a "supported" vinyl bear no out-

4. The Senate Finance Committee Report (S.Rep. No. 530, 89th Cong., 1st Sess. 26 (1965)), commenting on provisions of the House bill agreed to without change, states:

Essentially, the changes [relating to textile fabrics, coated or filled, or laminated, with rubber or plastics] provide that articles *made of this fabric* will be dutiable as textile articles to the extent that the textile fabric forms the outer or exposed surface of the article. Conversely, to the extent the nontransparent

ward resemblance to a textile product. Thus, the proposed amendment of headnote 2(a) would exclude such fabrics from the defined concept of "textile materials" and provide for their being regarded as wholly of rubber or plastics to the extent that, *as used in the luggage, gloves, or other article* made therefrom, nontransparent rubber or plastics forms either the outer surface of the article or the only exposed surface of the fabric. [Emphasis supplied.]

The phrases, "outer surface of the article" and "inner surface of the article," clearly do not lend themselves to a roll of laminated fabric, but rather to a finished product. The majority says there is no "narrowing definition" given for the term "article," but this need not be set forth in *ipsis verbis.* It is particularly significant that the listing of specific examples, ranging from *rainwear to furniture,* includes only finished products and that it follows the statement that "the textile characteristics of these fabrics may be completely lost in the *final product.*" (Emphasis supplied).[4]

The majority's quotation from the *Tariff Classification Study,* Schedule 7, 440 (1960) is misplaced. This volume of the Study relates to "Specified products; miscellaneous and nonenumerated products," and there is no indication of any relationship whatsoever with the separate volume of the Study devoted to Schedule 3, "Textile Fibers and Textile Products," in which the meaning of "article" is at issue. In any event, the later (1965) legislative history would control.

The majority quotes from the House Ways and Means Committee Report, *supra* at 12–13, as follows:

rubber or plastics forms the outer surface, the article will be treated as being of rubber or plastics, as the case may be. [*Emphasis supplied.*]

The reference to "articles made of this fabric" and the phrase "outer or exposed surface of the article" are not compatible with the majority's contention that "films, strips, sheets, etc. enumerated in the superior heading to item 771.40 are all articles which are excludable from schedule 3."

Subsection (c) [sic (e)] would amend the article description for items 771.40–771.42 which cover rubber and non-cellulosic plastics in the form of film, strips, and sheets "which are flexible and unsupported." It is proposed to strike out the words "and unsupported." These words are surplusage. Where such film, strips, and sheets are supported, textile fabrics are the usual supporting media and such products are provided for in items 355.65–355.85.

The majority recognizes that this legislative history lends support for appellant's position, but declines to follow it. The majority says the legislative history "is not entirely free of ambiguity," because, though Congress seemingly thought that all textile fabric supported films, sheets, etc. of rubber or non-cellulosic plastics were provided for under items 355.65–.85, Subpart C headnote 2(c) of Part 4 of Schedule 3 "clearly provides otherwise." However, reading the above-quoted portion of the Committee Report *in context* with the Committee's earlier discussion of the *then* existing Tariff Schedules, it is clear that the Committee quite properly stated that all such films, sheets, etc. were *then* (prior to amendment) provided for under items 355.65–.85. Not until the bill being considered by the Committee eventually became the Tariff Schedules Technical Amendments Act of 1965, with the amendment adding headnote 2(c), could it be said that headnote 2(c) "clearly provides otherwise." Thus, the legislative history is not at all ambiguous.

The majority says that resort to Congressional intent is not to be had when the meaning of the words of a statute is clear. In fact the meaning of the words of the statute [5] is not clear. Rather, the meaning is clearly ambiguous. On the one hand, the superior heading to item 771.40 reads:

**5.** The language of the entire statute is to be considered. *Alexander v. Cosden Pipe Line Co.,* 290 U.S. 484, 496, 54 S.Ct. 292, 78 L.Ed. 452 (1934); 82 C.J.S. *Statutes* § 345 (1953).

**6.** There is more. Headnote 4(b) to Schedule 3 provides:

(b) In determining the component fibers of chief value in coated or filled, or laminated, fabrics and articles wholly or in part thereof,

Film, strips, sheets, plates, slabs, blocks, filaments, rods, seamless tubing, and other profile shapes, all the foregoing wholly or almost wholly of rubber or plastics:

This is limited by the following inferior heading:

Not of cellulosic plastics materials: Films, strips, and sheets, all the foregoing which are flexible:

On the other hand, the superior heading to item 355.82 reads:

Woven or knit fabrics . . . of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics . . . .

Without more,[6] it would appear that a roll of laminated fabric might be classified under either item. To clear up such an ambiguity, resort to legislative history is clearly proper. Even without resort to legislative history, under General Interpretative Rule 10(c) the choice would lie with item 355.82 since, as appellant points out, that item contains more difficult requirements to satisfy and more specifically provides for the instant merchandise. Further, under General Interpretative Rule 10(d), the choice would lie with item 355.82 since, as appellant further points out, it commands the higher duty rate.

The majority says that *Marshall Co. v. United States,* C.D. 4291, 334 F.Supp. 643, 67 Cust.Ct. 316 (1971), cited by appellant, is "inapposite to the present controversy." However, the following quotation from the court's opinion shows that *Marshall* is eminently apposite:

We conclude that it was the intent of Congress that coated, filled, or laminated fabric be regarded as other than a textile material only to the extent that non-

the coating or filling, or the nontextile laminating substances, shall be disregarded in the absence of context to the contrary.

This headnote demonstrates the Congressional intent to eliminate consideration of the value of rubber or plastics coating, filling, or laminating when determining the applicability of a provision.

transparent rubber or plastics forms the outer or exposed surfaces of such fabric as used in the final product made therefrom. *The term "article" as used in headnote 5, schedule 3 . . . does not embrace an intermediate product, such as the sheeting involved herein, which is material to be used for further manufacture.* Therefore, such merchandise may not be deemed wholly of rubber for the purposes of classification under item 771.42 . . . .

It follows that the sheeting involved herein must be considered a textile fabric, coated with nontransparent rubber, for tariff purposes. Since it is excluded from classification under items 355.65–355.85,[7] it was properly classified as a textile fabric, not specially provided for, of man-made fibers, under item 359.50. [Emphasis supplied. *Id.* 334 F.Supp. at 651, 67 Cust.Ct. at 327.]

This interpretation of the term "article" in headnote 5 of Schedule 3 would, in the absence of a contrary indication in the statute, apply to "articles" in Subpart C headnote 1(vii).

The judgment of the Customs Court should be reversed.

---

**7.** The involved merchandise weighed over 44 ounces per square yard and contained less than 50 percent by weight of textile fibers and was thus excluded by Subpart C headnote 2(c) of Part 4 of Schedule 3, *supra* note 2.