**The UNITED STATES, Appellant,**

v.

**CORNING GLASS WORKS, Appellee.**

United States Court of Customs
and Patent Appeals.

Nov. 16, 1978.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Branch Director, Joseph I. Liebman, John J. Mahon, New York City, for the U. S.

Murray Sklaroff, New York City, attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

The government appeals from the judgment of the United States Customs Court, 448 F.Supp. 262, 79 Cust.Ct. 72, C.D. 4716

(1977)[1] sustaining Corning Glass Works' (Corning's) protest relating to imported ampul inspection machines. The Customs Court held that proper classification was under item 678.50, TSUS, as "machines not specially provided for * * *." We reverse and remand.

## Background

The imported goods are machines used to inspect drug-containing ampuls for foreign matter in the drug solution, and for defects in the ampuls.

A conveying rod moves filled and sealed ampuls from an input chute to an inspection stage, where they are held by vacuum cups and rapidly rotated. Rotation is stopped abruptly and, before the contents cease swirling, an operator views the ampuls through a magnifying lens. Swirling mobilizes foreign matter, making it more readily visible. The ampuls are illuminated and viewed against panels of varying translucence. The operator separates unacceptable ampuls with push-button activated air jets. Acceptable ampuls are collected in a discharge chute.

1. The government's motion for rehearing was denied. *Corning Glass Works v. United States,* 80 Cust.Ct. ——, C.D. 4733 (1978).

2. TSUS items 710.86–710.90 read:
 SCHEDULE 7—SPECIFIED PRODUCTS: MISCELLANEOUS AND NONENUMERATED PRODUCTS.

 \* \* \* \* \* \* \*

 PART 2—OPTICAL GOODS; SCIENTIFIC AND PROFESSIONAL INSTRUMENTS; WATCHES, CLOCKS, AND TIMING DEVICES; PHOTOGRAPHIC GOODS; MOTION PICTURES; RECORDINGS AND RECORDING MEDIA

 \* \* \* \* \* \* \*

 Subpart C.—Surveying, Navigational, Meteorological, Drawing, and Mathematical Calculating Instruments; Measuring and Checking Instruments Not Specially Provided For.

 \* \* \* \* \* \* \*

 Optical measuring or checking instruments and appliances not provided for elsewhere in subpart C, D, or F of this part, and parts thereof:

 Item 710.86 Profile projectors and parts thereof * * *

Customs classified the goods under TSUS item 710.90,[2] modified by Presidential Proclamation 3822, 32 Fed.Reg. 19002, T.D. 68–9, as "[o]ptical measuring or checking instruments * * *." Corning advanced alternative claims for classification under item 678.50 TSUS,[3] as "[m]achines not specially provided for * * *," and several other TSUS items not relevant here.

The Customs Court held that legislative history and the rule of *ejusdem generis* limited TSUS item 710.90 to optical instruments that measure or verify the accuracy of a measurement. Because the imported goods lacked those functions, the court held the government's classification improper. Whether the imported goods were optical instruments was not determined. Corning's claim under item 678.50 TSUS was sustained.

## Issue

The issue is whether the Customs Court erred in finding that the goods were erroneously classified under item 710.90 [4].

 Item 710.88 Comparator benches, measuring benches, and micrometric reading apparatus, all *the foregoing and parts thereof*
 \* \* \*
 Item 710.90 Other . . . . . . . . . . . 25% ad val.

3. TSUS item 678.50 reads:
 Schedule 6.—METALS AND METAL PRODUCTS

 \* \* \* \* \* \* \*

 Part 4—MACHINERY AND MECHANICAL EQUIPMENT

 \* \* \* \* \* \* \*

 Subpart H.—Other Machines

 \* \* \* \* \* \* \*

 Item 678.50 Machines not specially provided for, and parts thereof .. 5% ad val.

4. In its motion for rehearing, the government argued that the presumption of correctness remained attached to its finding that the imported goods were "optical," even though the court had held the goods not to be "measuring or checking" instruments. The government cited item 708.89, "[o]ptical appliances and instruments not provided for * * * [o]ther, * * *," as an alternate classification more

## OPINION

The superior heading to TSUS items 710.-86–710.90 provides for "[o]ptical measuring or checking instruments * * *." The parties having agreed that the goods at issue are not "measuring" instruments, the controversy centers on whether the goods are optical "checking" instruments.

 Absent contrary indications, we give tariff schedule language its common meaning. *John S. James a/c The Consolidated Packaging Corp. v. United States*, 48 CCPA 75, 79, C.A.D. 768 (1961). "Check" is defined as "to inspect and ascertain the condition of esp. in order to determine that the condition is satisfactory: * * * investigate and ensure accuracy, authenticity, reliability, safety or satisfactory performance of * * *: to investigate and make sure about conditions or circumstances * * *." [5] Applying that definition, "checking instruments" clearly and unambiguously encompasses machines, like those imported here, that carry out steps in a process for inspecting ampuls to determine whether they conform to an imperfection-free standard. An ambiguity does not arise merely because additional dictionary meanings exist for "checking." If that were the test, most statutes would be ambiguous.

 Although "checking" includes the concept of verifying a measurement, the common meaning of "checking" is not limited to that concept. "Checking," in the context of TSUS item 710.60–710.80, was found broad enough to include egg candling (i. e., viewing eggs against a light to detect staleness, blood clots, fertility, and growth) machines. *Bruce Duncan Co., Inc., a/c Staalkat of America, Inc. v. United States*, 67

Cust.Ct. 430, C.D. 4312 (1971). [6] Limiting "measuring or checking instruments" to devices that measure or verify the accuracy of a measurement, improperly renders "checking" superfluous, because verification of a measurement is itself a form of "measuring." When possible, we must give effect to every word in a statute. *United States v. Gulf Oil Corp.*, 47 CCPA 32, 35, C.A.D. 725 (1959).

 The Customs Court found support for its restrictive interpretation in the legislative history of TSUS item 710.90. However, creation of an ambiguity in an otherwise clear and unambiguous statute, by reference to legislative history, is improper. *American Customs Brokg. Co., Inc., a/c Hamakua Mill Co. v. United States*, 433 F.2d 1340, 58 CCPA 45, 48, C.A.D. 1002 (1970); *Akawo, Morimura & Co. v. United States*, 6 Ct.Cust.App. 379, 381, T.D. 35921 (1915). The tariff provision at issue here is clear and unambiguous, and resort to legislative history is unnecessary and erroneous.

 The superior heading, as construed above, defines the cumulative scope of inferior items 710.86–710.90 TSUS. The scope of the superior heading is not limited by language in the inferior items. The rule of *ejusdem generis* is inapplicable where, as here, the statute is clear and unambiguous. *Sandoz Chemical Works, Inc. v. United States*, 50 CCPA 31, 35, C.A.D. 815 (1963).

 We hold that Corning's imported machines were "checking" instruments in the context of TSUS item 710.90, and, accordingly, that the Customs Court's contrary conclusion was in error.

---

specific than item 678.50. The court rejected the alternative because the government had failed to assert it as an affirmative defense. On appeal, the government repeats the argument in maintaining that the court below erred in finding item 678.50 the proper classification. Absent a finding on whether the imported machine is an "optical" instrument, we do not reach the correctness of classification under item 678.50.

**5.** Webster's Third New International Dictionary 381 (1971).

**6.** A machine essentially the same as that here involved, was found to have been correctly classified under item 710.90 in *Amaco, Inc. v. United States*, 74 Cust.Ct. 172, C.D. 4602 (1975). The court below distinguished that case on the basis of plaintiff's concession in *Amaco* that that machine was a checking instrument, the sole issue in *Amaco* being whether the machine was an optical instrument.

The Customs Court expressly declined to decide whether the present machines are "optical" instruments within the meaning of TSUS item 710.90. The testimony respecting the function of the lens, and whether that function is subsidiary, as defined in headnote 3 to Part 2, Schedule 7,[7] is in conflict. Because that issue is crucial in determining the correctness of the classification under TSUS item 710.90, and because the initial evaluation of conflicting testimony is the province of the Customs Court, we remand the case for consideration of that question.

---

7. Headnote 3 reads:

3. The term "optical instruments," as used in this part, embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for reviewing a scale or for some other subsidiary purpose.