**The BRECHTEEN CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 85–06–00738.**

United States Court of
International Trade.

Oct. 22, 1987.

Barnes, Richardson & Colburn, David O. Elliott and Jack Mlawski, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Kenneth N. Wolf, New York City, for defendant.

**MEMORANDUM OPINION
AND ORDER**

TSOUCALAS, Judge:

A trial was conducted in this action to determine the appropriate classification of collagen sausage casings. Plaintiff challenges Customs' classification of the merchandise under item 790.47, TSUS:

> Sausage casings not specially provided for, whether or not cut to length:
>
> 790.45   Of cellulosic plastics materials.....6.6% ad val.
> 790.47   Other ...........................4.2% ad val.

The importer contends that these goods are duty free under item 190.58, TSUS:

> Intestines, weasands, bladders, tendons, and integuments, not specially provided for, including any of the foregoing prepared for use as sausage casings.

The controversy centers on whether the distinction between "natural" and "artificial" sausage casings controls classifica-

tion, and whether integuments prepared for use as sausage casings include these casings.

## BACKGROUND

Five witnesses were produced at trial, each of whom testified as to their knowledge of collagen and/or natural sausage casings production. As few inconsistencies exist in their descriptions, the cumulative evidence will be summarized. The imported casings are made from collagen, which is a fibrous type of protein, common to all connective tissue, hides (skin), organs and like structures in the animal body. Tr. at 12, 56. The evidence discloses that according to component material, sausage casings are categorized as natural if they are prepared from animal (swine) intestine. Tr. at 44, 115, 172. Artificial sausage casings may be produced from paper, cellulose, plastic, cotton, nylon, or polyethylene, and cannot be consumed. Tr. at 12, 13. The collagen casings in issue are edible and while not considered "natural," are made from animal as opposed to non-animal material. Tr. at 45, 116, 173.

The process of producing these collagen casings begins with cattle hide after the epidermal layer (outer portion of the skin) is removed by the tanneries. Underneath this layer lies the corium layer, which is further split in two.[1] Tr. at 14. It is the inner part of this "hide split" that is the basic raw material of these casings. Tr. at 14, 56–57. The hides are then washed to eliminate the lime treatment used by the tanneries to remove the hair; if edible casings are sought the hide is treated with lime again. The hides are rewashed, placed in an acid solution to produce swelling which promotes water absorption, cut and ground into a doughy mass (slurry), diluted with water, and homogenized. The acid does not appear in the final product. The doughy mass of collagen is then extruded: pressed through a rotater to create a tube, then heat cured, and humidified. Finally, the product is cut, tied, shirred, and packaged. The production of edible casings includes the addition of glycerol (to retain moisture) and cellulose (to reduce friction). Tr. at 14–16.

The process takes up to approximately three weeks to complete. These imported edible collagen casings have been manufactured since the 1950's and exported to the United States since the 1960's. Tr. at 13, 14. It does not appear to be in dispute that this, or substantially similar methods, are the only ones in existence for producing sausage casings from cattle hide. If hide other than from cattle was used, it would also have to be split and extruded. Tr. at 18, 58, 79, 82.

For purposes of comparison, the process of obtaining natural sausage casings from animal intestines was also explained. This method requires that the intestine be pulled from the viscera, the first of five intestinal layers, and cleaned to remove its contents. The next several steps involve the removal of fat and the outer two layers of the intestine, which leaves the collagen rich sub-mucosa layer. This substance is then saturated in salt brine, flushed to remove the salt, sorted, graded, packed in dry salt, and repacked. Tr. at 68–69. Natural casings may be further processed to achieve either sewn or glued ("laminated") casings. Sewn casings require the intestine to be split and sewn together in the shape and diameter desired for that particular casing. The laminated casing involves splitting the intestine, and subjecting it to an acid bath, which loosens the fibers of the collagen, enabling the surface to become sticky. These strips are then laminated together on a mandrill and the "glue" used is either a collagen or gelatin solution. Tr. at 23, 70–71. The collagen solution may be obtained by the process described for producing collagen casings or from any other collagen source in the animal. Tr. at 24, 75. These casings are similarly cured, but with aldehyde, which aids in bonding by establishing cross linkage, and can be reinforced with netting. Tr. at 71.

---

1. Corium is the layer of the mucous membrane corresponding to the dermis: the sensitive vascular layer of skin consisting of fibrous connective tissue. *Webster's Third New Int'l Dictionary* (1961).

In both collagen and natural casings the raw material has been modified but to differing degrees. With the collagen casings the corium layer of the hide has been physically changed and its shape lost by comminution. Natural casings production involves the loss of several layers of the intestine, Tr. at 73, and the shape of the laminated casing is not one found naturally but is artificially created. Tr. at 93–94. The imported casings are composed of collagen, glycerol, cellulose, water, and some residual lime; by contrast, natural casings contain collagen, water and salt, and may contain netting for reinforcement. There are chemical reactions in both types of sausage casing production. In natural casings this occurs by virtue of the salt treatment and aldehyde to establish covalent bonds between the collagen molecules. Tr. at 73. With the collagen casings this reaction results from the lime treatment (in the nature of deamidation: amide bond split and ammonia released; causing the corium to be more susceptible to the acid swelling), the acid solution and heat curing. Tr. at 105, 120. Nevertheless, the basic chemical collagen structure remains the same. Tr. at 16–17, 88, 89, 129, 141. Collagen sausage casings are more uniform in size, dimension, and diameter than natural casings. Tr. at 117. They were developed to achieve greater machinability and therefore faster production capacity in their ultimate use. Tr. at 80.

## DISCUSSION

Plaintiff submits that the imported merchandise satisfies the criteria for "integument" and "prepared for use", and is thus specially provided for under item 190.58. The common meaning of integument includes:

1: something that covers or encloses . . .

2: an external coating or investment: as . . . b: an enveloping layer, membrane, or structure (as the skin of a fish or the exoskeleton of an insect) . . .

*Webster's Third New Int'l Dictionary* (1961); *See also United States v. White*, 8 Ct.Cust.App. 115, T.D. 37224 (1917).

Defendant concedes that the raw material is initially integument; and acknowledges that one meaning of "integument" is skin. However it is urged that the imported merchandise is not integument for tariff purposes since the corium layer is no longer identifiable. Defendant argues that the corium, the skin, ceases to exist in its physical structure; and has not been "prepared for use" as a sausage casing, but has been extensively manufactured into a casing. Defendant distinguishes these from natural casings, which are really the intestine, merely cleaned and subject to a preserving process, where the collagen has not been restructured, but remains intact.

Plaintiff relies on that testimony which demonstrates that the only method of producing sausage casings from integuments, is by a process similar to the one used to make these imported collagen casings. Furthermore, although not commercially manufactured, casings made from tendons would require similar operations, since tendons are not tube like in natural shape. Tr. at 27. Thus, plaintiff submits defendant's interpretation of the tariff terms would render superfluous the inclusion of integuments and tendons prepared for use as sausage casings in item 190.58.

The term "prepared" has usually arisen in the context of the phrases "prepared or preserved" and "not otherwise prepared". It has been held, though, notwithstanding the technical distinctions that may be drawn based on the varying use of "prepared", "the word originated and was normally used to describe edible substances which were not in their original, fresh condition and which had been processed or prepared for use by some means." *Wakunaga of America Co. Ltd., v. United States*, 1 CIT 302, 305 (1981) [Available on WESTLAW, 1981 WL 2462] (citations omitted) (garlic aged in alcohol, concentrated by a vacuum process, mixed with garlic powder produced by dehydration, and soybean powder, was a process of preparing garlic for use as a food supplement).

Prepared "implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding,

mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used." *United States v. Conkey & Co.*, 12 Ct.Cust.App. 552, 555, T.D. 40783 (1925). In determining that potatoes, finely ground into flour were "potatoes, prepared," the salient factors were that the article had not acquired a new name, use or character; no chemical change in the raw material was effected by the drying and grinding process; and the final article was of the essential nature, serving one of the same purposes, of the potato. *Stein, Hirsch & Co. v. United States*, 6 Ct.Cust.App. 154, 155–56, T.D. 35397 (1915).

The fact that the corium was advanced in value and condition toward its ultimate use does not hinder plaintiff's claim. The article may still be described as prepared even though the initial state of the raw material has been lost, as the potatoes and garlic were ground into powder form. There is no requirement that the corium remain recognizable. Although the corium has been restructured the collagen structure remains intact. The testimony and physical evidence demonstrate that even natural casings do not retain their original shape or identity as the intestine when made into sausage casings. There being no other way to process the casings from cattle hide, it appears that reference to integument would be meaningless in item 190.58, if this process was not considered within the parameters of "prepared for use."

Defendant contends that item 190.58 covers only natural sausage casings, and historically, sausage casings made from hide splits were considered artificial and intended to be classified under item 790.47. The predecessor sections to item 190.58 provided for "Sausage casings, weasands, intestines, bladders, tendons, and integuments not specially provided for." *See* ¶ 1755 of the Tariff Act of 1930, and ¶ 1655 of the Tariff Act of 1922. In construing the term sausage casings, its common meaning included only cleaned and prepared entrails of animals and excluded casings made of other materials. *J.E. Bernard & Co. v. United States*, 17 CCPA 398, 400, T.D. 43834 (1930). *See Hoyt, Shepston & Sciar-*

*oni, S. Blondheim & Co. v. United States*, 52 Cust.Ct. 7, C.D. 2426 (1964), *aff'd* 52 CCPA 101, C.A.D. 865 (1965); *S. Blondheim & Co., Hoyt, Shepston & Sciaroni v. United States*, 49 Cust.Ct. 8, C.D. 2352 (1962) (where the sausage casings were composed of hog bungs with viscon (fabric) linings, it being an essential requirement for ¶ 1755 that the sausage casing be an animal organ or part, the presence of the non-natural viscon precluded classification as natural sausage casings).

In *Brecht Corp. v. United States*, 25 CCPA 9, T.D. 48977 (1937), *cert. denied* 302 U.S. 719, 58 S.Ct. 39, 82 L.Ed. 555 (1937), the sausage casings similarly were prepared from hide splits, subject to a lime bath, cut into small pieces, extruded, and kneaded like dough. As these casings were not within the common meaning ascribed to sausage casings, the only issue was whether a commercial definition included artificial casings. The court concluded from the legislative history that Congress intended to free list only sausage casings made from animal intestines. *Id.* at 15. Artificial sausage casings may be made from a number of different processes from several raw materials, distinguishable from the language in ¶ 1755 referring to all old tariff terms relating to well known animal organs or parts. The court reasoned that Congress would have used appropriate language if artificial casings were to be included within this provision. *Id.* at 15–16.

The revised Tariff Schedules replaced ¶ 1755 with item 190.58. In reference to this new provision the Tariff Commission reported:

Item 190.58 is based on paragraph 1755. The term "sausage casings" in paragraph 1755 has been construed to cover only casings made of animal *integuments.* In order to avoid further uncertainty the provision has been recast.

*Tariff Classification Study,* (*TCS*) Explanatory and Background Materials, Schedule 1, 255 (1960) (emphasis added). However, as plaintiff contends, the reference to sausage casings made from animal *integuments* contradicts case law inter-

preting ¶ 1755 as covering sausage casings made of animal *intestines.* Defendant suggests that use of the word "integument" in the *TCS* implies "entrails", the common meaning of sausage casings, but nonetheless, stresses that this revision does not bring hide splits within the parameters of 190.58, as they are specifically referred to in the comments on item 790.45 (subsequently subdivided to provide for item 790.-47).

Item 790.45 was enacted concurrently with item 190.58. The scope of this provision was described in the *Tariff Classification Study*, Explanatory and Background Materials, Schedule 7 at 472:

> Item 790.45 covers sausage casings other than those provided for in item 190.-58.... The principal kinds of casings included in item 790.45 are those made of cellulose currently dutiable at various rates under paragraph 31, and those made from hide splittings, currently dutiable by virtue of the similitude provision in paragraph 1559 ...

Plaintiff emphasizes that the corium is a layer of skin and thus integument; and if item 790.45 includes sausage casings made from the corium layer, this is in direct conflict with item 190.58 providing for sausage casings prepared from integument. Plaintiff argues that this ambiguity in the legislative history cannot be used to defeat the clear meaning of the statute.

It is reasonable to conclude that by recasting ¶ 1755, Congress intended to change its meaning. *United States v. Canadian Vinyl Industries, Inc.,* 64 CCPA 97, 104, C.A.D. 1189, 555 F.2d 806, 810 (1977). Although the comments on item 790.45 refer to sausage casings made from hide splittings, this does not dispose of the issue, since item 790.45 was later subdivided to cover only cellulose casings and item 790.47 was created to encompass other casings. *See* Tariff Schedules Technical Amendments Act of 1965, Pub.L. No. 89–241, § 83, 79 Stat. 933, 949, 89th Cong., 1st Sess. (1965). The purpose was to continue the protection historically afforded cellulose casings manufacturers while recognizing the increased volume of trade in noncellulose casings. The accompanying legislative comments further reveal:

> The new tariff schedules treat all these sausage casings [made from pig bungs with viscon linings, hide fleshings, and cellulose] in a single category which provides a 16% duty.... the single provision ... would be subdivided [so that] ... sausage casings of cellulosic plastics materials are to be dutiable at 25.5%, while other casings, those of hide fleshings and of pig bungs, are to be dutiable at 12.5% ...

S.Rep. No. 530, 89th Cong. 1st Sess., 11 (1965), *reprinted in* 1965 *U.S.Code of Cong. & Admin.News* 3416, 3425. However, it is unclear why Congress employed the the term hide fleshing, described as the scrapings from the flesh side of hides, used in making glue; [2] which is not synonymous with the term hide splits.

An indication of what Congress might have intended should not override the clear meaning of the words in the statute. *American Customs Brokg. Co. v. United States,* 58 CCPA 45, 48, C.A.D. 1002, 433 F.2d 1340, 1341 (1970). This principle is especially applicable where the sources of legislative history are not without ambiguity. *Canadian Vinyl,* 64 CCPA at 105, 555 F.2d at 811. The language employed in the statute will ordinarily be regarded as conclusive absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Although it is urged that Congress intended to preclude from classification under item 190.58, sausage casings traditionally considered artificial, the language of the tariff provisions do not seem to support that distinction. Furthermore, "going behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously'

---

**2.** *Webster's Int'l Dictionary* (2d Ed.1934), which also defines *flesh* as the soft parts of the body of man or animal usually excluding the integument, commonly used of those parts composed chiefly of muscle and thereby excluding most of the viscera.

even under the best of circumstances." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 75, 102 S.Ct. 1534, 1540, 71 L.Ed.2d 748 (1982) (quoting *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977).

Presumably item 190.58 was reformed in response to the *Brecht* decision so that casings prepared not only from intestines but from any of the enumerated animal parts would be eligible for classification therein. These collagen casings are edible as are natural casings and are possessed of the same essential collagen found in natural casings. The Court necessarily determines that the collagen casings prepared from the corium layer are properly classifiable under item 190.58 as "integument" ... "prepared for use as sausage casings," in order to give effect to every word in the statute. *See United States v. Corning Glass Works*, 66 CCPA 25, 28, C.A.D. 1216, 586 F.2d 822, 825 (1978),

## CONCLUSION

The imported collagen sausage casings are properly classifiable under item 190.58, TSUS. The initial raw material is the corium layer of cowhide which is integument. The mechanical grinding of the corium and subsequent liming and acid swelling are part of the process of preparing the corium for use as sausage casings. This process or ones similar thereto are the only known methods for producing sausage casings from cattle hide. While these casings are considered artificial, that does not preclude their classification under item 190.58. As the imported casings satisfy the tariff description of 190.58, they shall be so classified. So ordered.