ELECTRONIC ARRAYS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84–10–01387

(Decided August 8, 1988)

*Horton & Whiteley, (Robert Scott Whiteley)* for plaintiff.
*John R. Bolton,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Civil Division, United States Department of Justice *(Florence Peterson)* for defendant.

MEMORANDUM OPINION AND ORDER

WATSON, *Judge:* This action challenged the tariff classification of imported articles which are used to inspect the quality of semiconductor devices while they are being manufactured. The articles consist of transport mechanisms, which move the semiconductors, and

---

microscopes which are screwed on to a rod extending from the transport mechanism.

One type of importation is called a bonding checker, and it is used to inspect the semiconductor device just before it is encapsulated. The bonding checker inspects the bonding wires which form the electrical connection between the integrated circuit and the lead frame to ascertain that wires are properly attached and spaced. The bonding checker automatically moves an unencapsulated semiconductor device in front of the operator, at which point it is scrutinized through the microscope. The operator may then choose between pressing a switch which allows good devices to pass on, or a number of rejection switches, each of which relates to a specific type of defect and causes the device to be transported to the appropriate rejection container. The bonding checker also has an automatic counter that keeps track of the number of devices which are accepted and rejected.

The other type of importation is called a die visual checker. It is used to inspect the part of a semiconductor known as an expanded wafer which has surface components known as dies. The dies to be inspected are aligned on a plastic sheet and attached by a thin layer of adhesive. The sheet is held by a special ring and placed on a movable stage. The operator can then view the dies through the microscope, look for defects, and choose between acceptance and eight categories of rejection. If rejected, a pen automatically pushes the die up from the side to reduce its adhesiveness, a vacuum nozzle sucks it up, and it is pushed into the appropriate rejection bottle.

The government classified the imported articles as other "optical instruments" under item 710.90 of Schedule 7, Part 2, headnote 3 of the TSUS which states:

> 3. The term "optical instruments" as used in this part, embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some other subsidiary purpose.

Plaintiff claims that the transport mechanisms and the microscopes should be classified separately; the former in the provision for conveyers and other lifting, handling, loading or unloading machinery,[1] and the latter in the provision for compound optical microscopes.[2]

---

[1] Item 664.10 of the Tariff Schedules of the United States (TSUS), which provides for "elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, handling, loading or unloading machinery or conveyors.

The government argues that the imported articles are not like the ones described in item 664.10 according to *Summaries of Tariff and Trade Information,* Schedule 6, Volume 8, p. 179 (1969) giving examples of the various types of heavy duty equipment, which indicates the long standing administrative practice and interpretation of item 664.10 to be limited to heavy-duty industrial equipment designed to move material from one place to another externally to the device itself (*See,* Defendant's Opposition to the Plaintiff's Cross-motion for Summary Judgment, page 8).

[2] Item 708.73 of the TSUS.

The parties have made cross-motions for summary judgment. At a hearing conducted by telephone, the court satisfied itself that there were no genuine issues of fact necessitating a trial. The question before us is entirely one of law, namely whether the articles formed by the attachment of the microscopes to the transport mechanism are unitary articles subject to classification as entireties. Stated differently the issue is whether the transport mechanisms and microscopes are separate and independent articles for the purposes of tariff classification.

The government stresses the simple and undisputed fact that the importations are used in a unified configuration for the visual inspection of semiconductor devices.

The plaintiff makes a more complex argument. It stresses the rudimentary and easily reversible way in which the microscope is screwed on to the transport mechanisms. It argues that the law defines "optical instruments" as instruments which "incorporate" one or more optical elements, meaning much more permanent or customized incorporation than the simple external attachment which takes place here. The plaintiff also stresses the fact that the microscopes involved here are of an ordinary variety without special adaptation for the use of semiconductor inspection. In addition, the plaintiff points out that the microscopes comprise approximately ten percent of the value of the importations.

The government classification of the imported articles as optical checking instruments enjoys the presumption of correctness, unless the court finds it to be erroneous.

The court finds no meaningful distinction between the facts in this case and those in *Corning Glass Works* v. *United States*, 82 Cust. Ct. 249, C.D. 4807 (1979), on remand from the Court of Customs and Patent Appeals in *United States* v. *Corning Glass Works*, C.A.D. 1216, 586 F.2d 822 (1978). In that case the imported articles involved a device designed to inspect drug-filled ampuls by moving the ampuls and rapidly spinning them around under observation of an operator through a magnifying lens which was included within the imported article. That device was also classified as an optical instrument under 710.90 of Schedule 7, Part 2, headnote 3 of the TSUS.

On remand from the Court of Customs and Patent Appeals in *Corning*, the Customs Court found that

> * * * the Rota's [article's] primary function is the optical inspection of ampuls, and the magnifying lens concededly must be employed to perform such function. The fact that the Rota incorporates nonoptical apparatus to mechanize and pace the inspection process does not alter the fact that the machine's function is optical inspection. Since the Rota's sole purpose is optical inspection, its optical element is obviously at least coequal in function to the machine's nonoptical features.

> \* \* \* it must be recognized that the optical element itself need not be the most important or dominant element of the instrument. As held in *Ataka*, "the statutory distinction is between 'subsidiary' and not 'subsidiary'" (64 CCPA at 66, n.5).

*Id.,*at 257, 258.

Plaintiff here does not dispute that the microscopes included in the imported article serve more than merely a subsidiary function. Instead, plaintiff alleges that classification of these articles is governed by the doctrine of entireties, under which these microscopes and transporting mechanisms would be classified separately as two independent articles.

The government, on the other hand, argues that the doctrine of entirety does not apply in this case, because Congress clearly intended to classify such combination instruments and appliances which incorporate optical elements as a single article covered by item 710.90 of TSUS.

The doctrine of entirety has nowhere been better explained than in the scholarly opinion of Judge Mollison in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 315 C.D. 1619 (1954), as follows:

> If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

While this doctrine is very useful in determining the object of statutory coverage, the statute itself dictates its scope. The retention of individual identities of the transporting mechanisms and microscopes and the ease of their physical separation do not override their classification as a unified entity in this case, where the statutory coverage is explicitly extended to such combinations. The law does not allocate the pro rata functional significance or value of the optical element of the imported article, but requires only that it is not a subsidiary element of the instrument. It is not up to this court to change that.

In view of the existing precedents and the specific statutory coverage of devices which combine optical and other features, the court concludes that the existence of a direct physical, as well as functional relationship between the transporting mechanisms and microscopes in question is dispositive in this case.

The court finds that these importations include an optical element which serve more than a subsidiary function, and, therefore, their classification as optical checking instruments under item 710.90 of TSUS was not erroneous.

For the reasons given above it is hereby

ORDERED that defendant's motion for summary judgment is granted and it is further

ORDERED that plaintiff's cross-motion for summary judgment is denied and it is further

ORDERED that the liquidated classification and assessment of duties of the appropriate Customs Service official is affirmed and this action is dismissed.